Bertram Harnett, J.
Today we pull at the fibers of two of the law’s more careless weavings: the arrest of a man for purely civil (not criminal) misdeeds, and, the unequal treatment of people solely because of their sex. Each represents centuries of activity on the loom of individual liberty and social convention.
Traditional wisdom would have it that our jails are reserved for those properly accused or convicted of crimes. In the Anglo Saxon jurisprudence of yore, the imprisonment of debtors in purely civil disputes was common. But, through the years, the valuation of human liberty over commercial concerns has risen and the injustice of jailing people without criminal culpability has been perceived. Yet, civil imprisonment still survives.
CPLR 6101 allows the jailing in New York of a defendant in a pending commercial civil case. This arrest takes place before the complaining party proves his case, and, without prior notice to the potential prisoner. True, a victim can perhaps free himself on bail, or, if later vindicated, sue the complainer for causing a false detention. However, this may be of little *77 enduring consolation as the jail doors slam shut and the prison population surges forward in welcoming embrace. Liberty lost through imprisonment can never be recovered; it is irrevocably lost living time.
The law has been even slower to respond to the injustice in its sex discriminations. But, the law, which has long assigned different rights and responsibilities to women and men, no longer tolerates unjustified biological bigotry. With an increasingly aroused awareness, our Legislatures and courts are eliminating arbitrary sex bifurcations, but some still survive.
Now, it would appear that a decisive challenge to civil arrest comes from an unlikely source: sex discrimination. In the modern insistence on sex equality, as an unanticipated social dividend, the ancient practice of arresting only men for anticipated civil default must finally end.
I. The "Repetti-Gil” Dispute
In September, 1973 Repetti and Gil formed a joint venture to import and distribute brush handles and broomsticks. Repetti was to supply the capital, Gil the know-how and labor. Over the next 14 months, Repetti claims, he contributed $75,000 in capital and machinery to the venture, and Gil "siphoned off” much of this money for his own use.
Repetti commenced a civil suit against Gil for fraud and conversion, and also sued for an accounting. Simultaneously, he moved to attach Gil’s property in New York, claiming that Gil was about to sell his house and move to Texas, effectively avoiding the jurisdiction of a New York court.
The attachment motion was argued on January 8, 1975 before Mr. Justice Albert of this court. Gil apparently confirmed his plans to move, but (according to Repetti and denied by Gil) represented orally that he would not sell the house while the motion was under consideration. No transcript of that oral discussion has been submitted, or referred to, so there is no documentation as to what was actually said.
By order dated January 16, 1975, Mr. Justice Albert granted the attachment. That same day, Repetti filed a notice to attach real property, but too late. Gil had sold the house two days earlier on January 14,1975.
Repetti then moved to have Gil arrested under CPLR 6101 to keep him available to be sued civilly. By affidavit, Repetti claimed (a) he had a cause of action for fraud, deceit, and conversion of real property, as contemplated by CPLR 6101 *78 (subd 1); and, (b) Gil was guilty of contempt for his misrepresentation to the court, and was about to leave the State emasculating any judgment that might be rendered against him, requiring the use of CPLR 6101 (subd 2).
Mr. Justice Albert ordered an arrest, setting bail at $5,000, and directed the sheriff to bring in Gil on February 18 for the hearing mandated by CPLR 6111.
At the hearing, this court tentatively continued the arrest order, but released Gil in the custody of his attorney pending this determination. When the constitutionality of the civil arrest statute was questioned, New York’s Attorney-General was notified, but he declined to appear in its support.
II. Analysis of CPLR 6101
A. Text
"§ 6101. Grounds for arrest.
"An order of arrest as a provisional remedy may only be granted:
"1. where there is a cause of action to recover damages for the conversion of personal property, or for fraud or deceit, and the person to be arrested is not a woman; or
"2. where the plaintiff has demanded and would be entitled to a judgment or order requiring the performance of an act the neglect or refusal to perform which would be punishable by the court as a contempt and where the defendant is not a resident of the state or is about to depart therefrom, by reason of which non-residence or departure there is a danger that such judgment or order will be rendered ineffectual.”
B. The Two Parts Of The Statute
As the text reveals, civil arrest under CPLR 6101 is available on two alternate bases, although the common thread is to keep on hand a defendant who might elude a civil lawsuit. This enforced availability of the person is one of that class of procedures known as "provisional remedies.” (CPLR 6001.)
According to the statute, Gil could conceivably be subject to arrest under either of the subdivisions.
1. 6101 (subd 1) — Conversion Or Fraud
Under this part, men, but not women, are subject to detention if they are sued for damages for fraud or conversion. We will later opine that this is a fatal sex discrimination, rendering this provision unconstitutional.
There is not articulated in this subsection any direct con *79 cern for defendant unavailability. There is only an implication of risk of trial nonattendance because of the bad character assumed to exist by virtue of an accusation of a morally offensive civil act.
2. 6101 (subd 2) — The Elusive Defendant In Certain Types Of Cases
Here, no sex distinction is drawn. The situation is extensively defined, but poorly understood. It apparently requires a complaint by some person who "would be entitled” to a court direction of a kind where the refusal of the subject to comply would be punishable by contempt, and where the defendant’s elusiveness may frustrate the court order.
The court remains skeptical of the desirability, meaning, definiteness, and justice of this section. But, whatever it means, it will be demonstrated that the statutory requirement which might justify granting the relief requested under 6101 (subd 2) is not established.
III. CPLR 6101 (subd 1) Is Fatally Defective For Sex Discrimination
This is an action for fraud, deceit, and conversion, plainly within CPLR 6101 (subd 1). However, we find CPLR 6101 (subd 1) violates the Equal Protection Clause of the Fourteenth Amendment to the Federal Constitution[1] because it subjects Gil as a man, to arrest, while flatly exempting all women.
Dividing people into categories and treating them differently depending on their category is a troublesome but sometimes necessary and permissible thing. Denying a driver’s license to people because of their race is clearly intolerable, but denying one to people under 12 years of age may be quite sound.
The United States Supreme Court has evolved standards to measure the validity of a discriminatory statute under the optics of the Equal Protection Clause. According to these, we must examine a statute with two different intensities, depending upon the interests involved. At the beginning, we look for rationality in the statute’s categories. But, when a statute touches subjects of special concern, where the classifications *80 are suspected of injustice or involve fundamental rights, we must look beyond mere rationality. To sustain the statute then, we must find a compelling State interest in the announced distinction. (See, e.g., Shapiro v Thompson, 394 US 618.)
A. Rationality
Absent the involvement of suspect classifications or fundamental rights, a statute distinguishing among different categories may be sustained if the classifications bear some rational relationship to the statute’s objectives. (McGowan v Maryland, 366 US 420; Morey v Doud, 354 US 457; Royster Guano Co. v Virginia, 253 US 412; Lindsley v Natural Carbonic Gas Co., 220 US 61.)
B. Compelling State Interest
Some statutes, however, will need more than just some rational basis to sustain them. We must examine with strict scrutiny statutes which affect certain "suspect classifications” of people (e.g., Graham v Richardson, 403 US 365 [alien status]; Loving v Virginia, 388 US 1 [race]; McLaughlin v Florida, 379 US 184 [race]), or which encroach upon specific "fundamental rights” (e.g., Police Dept. of Chicago v Mosley, 408 US 92 [freedom of expression]; Dunn v Blumstein, 405 US 330 [vote]; Shapiro v Thompson, 394 US 618 [interstate travel]). A statute can survive this closer examination only if a compelling State interest justifies the legislated discrimination.
C. Application Here
Without doubt, CPLR 6101 (subd 1) discriminates between men and women. Men can be arrested under it, while women may not be. But, does this discrimination violate the Equal Protection provision? What standard shall we use to decide?
Is rationality of the distinction the test, or is sex a "suspect criterion” requiring strict judicial scrutiny to unearth a compelling State interest in the distinction?
In Reed v Reed (404 US 71) a State statute which favored men over women in the appointment of probate administrators was overturned. The court concluded the sex distinctions bore no rational relationship to the purpose of the law, and did not inquire as to suspicion of classification.
On the other hand, in Frontiero v Richardson (411 US 677) the United States Supreme Court utilized a strict scrutiny in striking down a gender distinction in a statute providing *81 benefits for the families of military personnel. The law set up different standards of benefit entitlement for the husbands of servicewomen than for the wives of servicemen. Mr. Justice Brennan’s plurality opinion found sex among that collection of criteria which a statute could not employ without encountering close judicial scrutiny as to its validity. Under this standard of review, the distinction in the right to service benefits fell. However, only three other Justices joined in Mr. Justice Brennan’s opinion. A full majority of the court has never expressly declared sex a suspect classification. (Frontiero v Richardson, supra, Mr. Justice Powell concurring, p 691; Stanton v Stanton, 421 US 7.)
In this case, whether we rely on irrationality of distinction or whether we conclude sex is a "suspect criterion” and apply the tough "compelling state interest” test, we reach the same conclusion: the statute unconstitutionally discriminates against men. In addressing the statute’s constitutionality under either standard, we note the reasons for its sex distinctions.
Women’s exemption from civil arrest apparently derives from the common law in an age when the law denied married women the right to contract or own property. It originated in a time when people were commonly jailed for debt or for tortious conduct. But, a married woman could not fall into contractual debt, and her husband was liable for her tortious conduct. She was free of civilly arrestable claims. (Robinson v Rivers, 9 Abb Prac [N.S.] 144; Baldwin v Kimmel, 16 Abb Prac 353; Schaus v Putscher, 25 How 463; Solomon v Waas, 2 Hilt 179.) In the quaint phrasing of the common law, the husband and wife were one, and the husband was the one. But, with the advent of the Married Women’s Acts (Domestic Relations Law, § 50; General Obligations Law, § 3-301) allowing a married woman to own property and to contract, this justification crumbled. While neither party has proposed a rationale for the sex distinction in today’s statute, one commentator suggests it may have resulted from "a compromise within the Legislature or simply a certain squeamishness about incarcerating females in civil actions solely because of the nature of the lawsuit brought against them.” (7 Weinstein-Korn-Miller, NY Civ Prac, par 6101.12.)
Squeamishness is not enough. Courts can no longer accept the idea that women have a special legal position in society. The idea is objectionable, both from the male and female *82 considerations. In modern view, protectionism may foster oppression. (See, Stanton v Stanton, 421 US 7; Taylor v Louisiana, 419 US 522; Matter of Patricia A., 31 NY2d 83.)
If the statute were originally intended to protect those with primary responsibility to maintain a home and care for young children, it is painted with too broad a brush. It subjects to arrest men with those obligations while exempting women without them. (See, Weinberger v Wiesenfeld, 420 US 636; Stanley v Illinois, 405 US 645.)
The statute attempts to insure the presence at trial of civil defendants alleged to be particularly untrustworthy, and to establish security for any eventual judgment through the use of bail, if it can be raised. Women, in their humanity, are equally as capable of untrustworthiness as men. The sex of a person has no rational relationship to the objectives of this statute. Certainly, no compelling State interest requires the discrimination.
Moreover, women cannot be jailed under CPLR 6101 (subd 1), but they can be under CPLR 6101 (subd 2). This distinction is totally without support on rational grounds.
In short, the purposes of CPLR 6101 (subd 1) do not justify its sharply different treatment of men and women. Men and women are placed by the statute into different classes on the basis of criteria wholly unrelated to its objective in violation of the Equal Protection Clause. (Reed v Reed, 404 US 71, supra.)
IV. Repetti Fails To Comply With CPLR 6101 (subd 2) In Bringing The Arrest
Repetti also seeks to base the arrest order on the independent ground that Gil has been guilty of contempt and may soon leave the State to avoid judgment. (CPLR 6101, subd 2.) But, the terms of his application fail to support an arrest on that ground.
A. The Subject Matter Here Is Not Covered By CPLR 6101 (subd 2)
The provisional remedy of civil arrest applies when the plaintiff would be entitled to a court directive, ultimately enforceable by contempt proceedings and the defendant appears ready to avoid an anticipated contempt citation by leaving the State. (See, Wulff v Wulff, 151 App Div 22; Ridder *83 v Ridder, 175 Misc 84; Kloeppel v Kloeppel, 172 Misc 630; but see, Karpf v Karpf, 260 App Div 701.)
But, here, Repetti seeks Gil’s arrest not to protect the efficacy of an anticipated court order, nor to keep Gil within the court’s coercive jurisdiction. Rather, Repetti’s supporting affidavit asks for Gil’s arrest for contempt already committed. He calls Gil contemptuous for selling his house after telling Mr. Justice Albert he would not.
The record presented is sketchy. The court is not satisfied with the proof that there was in fact any order by Mr. Justice Albert which Gil violated, or that Gil in any other way evinced contempt of the court. In any event, the proper remedy here would have been to seek immediate punishment for criminal contempt. (Judiciary Law, § 750 et seq.) Civil arrest as a provisional remedy is essentially a security device. Repetti here is not seeking security for anything, only punishment. Civil arrest, a drastic remedy, should only be employed, if at all, when essential and appropriate.
B. Insufficient Showing By Repetti Of Ultimate Entitlement To Relief
A motion for civil arrest must include affidavits which establish that plaintiff has a proper cause of action and otherwise satisfies the requirements of CPLR 6101. (CPLR 6112, subd [a].)
Arguably, Repetti’s demand for an accounting could support a civil arrest order. The failure to comply with a court-ordered accounting is an act ultimately "punishable by the court as a contempt.” (Ensign v Nelson, 49 Hun 215; Klenoff v Goodstein, 268 App Div 510.) However, Repetti’s affidavit moving for the arrest order does not mention the accounting aspect of his case, nor does it show facts sufficient to establish his entitlement to the accounting.
C. The Underlying Unpalatability
Having determined that Repetti’s application does not meet the statutory requirements of CPLR 6101 (subd 2), the court need not decide the constitutionality of that subsection.
However, the court questions the desirability in our time of clinging even to this remaining part of the statute.
Provisional remedies involving the seizure of property in civil matters have been found unconstitutional in the absence of notice and opportunity to be heard. (Sniadach v Family Fin. Corp., 395 US 337; Fuentes v Shevin, 407 US 67; Mitchell v *84 W T. Grant Co., 416 US 600; North Georgia Finishing v Di-Chem, 419 US 601.) Human liberty is certainly a higher social priority than the protection of property. In the jurisprudential van, Professor John Rawls, in his remarkable book, Theory of Justice (1971), suggests that liberty is the absolute first priority in ordering a just society.
The provisional remedy of arrest is little more than the use of criminal sanctions and jail threats to enforce private or commercial obligations.
Moreover, CPLR 6101 (subd 2) raises the issue of vagueness, for it leaves Judges free to decide, without any legally fixed standards, what constitutes a danger that a court order will be rendered ineffective. (Giaccio v Pennsylvania, 382 US 399.)
How do we know the plaintiff "would be entitled” to relief unless we hear the defendant? Apparently, the statute means relief to which the plaintiff would be entitled "if he or she won.” Putting someone to the pain of jail without notice for a yet unproved civil claim is a bit much for our democratic heritage. It is no answer that a person can post bail or get damages from a false accuser — the inherent deprivation of liberty at the threshold is too fundamental. It is also no answer that a Judge reviews the plaintiff’s papers; the equitable type relief underlying the section relies heavily on individual facts and circumstances, freedom from affirmative defenses, and often collateral circumstances of feasibility.
There remains then in CPLR 6101 (subd 2), and the balance of evil it portends, an excellent opportunity for both legislative and judicial reform initiative.
V. Conclusion
In sum, Repetti’s motion for an arrest order cannot survive. The arrest order shall be vacated. Gil, who had been in the custody of his attorney pending this decision, shall be released from that custody.

. US Const., 14th Amdt, § 1. "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.”