# STANTON *v.* STANTON

No. 73–1461.  Argued February 19, 1975—Decided April 15, 1975

BLACKMUN, J., delivered the opinion of the Court, in which BURGER, C. J., and DOUGLAS, BRENNAN, STEWART, WHITE, MARSHALL, and POWELL, JJ., joined. REHNQUIST, J., filed a dissenting opinion, *post*, p. 18.

*Bryce E. Roe* argued the cause for appellant. With him on the brief was *William G. Fowler*.

*J. Dennis Frederick* argued the cause for appellee. On the brief was *D. Gary Christian*.

MR. JUSTICE BLACKMUN delivered the opinion of the Court.

This case presents the issue whether a state statute specifying for males a greater age of majority than it specifies for females denies, in the context of a parent's obligation for support payments for his children, the equal protection of the laws guaranteed by § 1 of the Fourteenth Amendment.

## I

Appellant Thelma B. Stanton and appellee James Lawrence Stanton, Jr., were married at Elko, Nev., in February 1951. At the suit of the appellant, they were divorced in Utah on November 29, 1960. They have a daughter, Sherri Lyn, born in February 1953, and a son, Rick Arlund, born in January 1955. Sherri became 18 on February 12, 1971, and Rick on January 29, 1973.

During the divorce proceedings in the District Court of Salt Lake County, the parties entered into a stipulation as to property, child support, and alimony. The court awarded custody of the children to their mother and incorporated provisions of the stipulation into its findings and conclusions and into its decree of divorce. Specifically, as to alimony and child support, the decree provided:

> "Defendant is ordered to pay to plaintiff the sum of $300.00 per month as child support and alimony,

> $100.00 per month for each child as child support and
> $100.00 per month as alimony, to be paid on or
> before the 1st day of each month through the office
> of the Salt Lake County Clerk." App. 6.

The appellant thereafter remarried; the court, pursuant
to another stipulation, then modified the decree to relieve
the appellee from payment of further alimony. The
appellee also later remarried.

When Sherri attained 18 the appellee discontinued pay-
ments for her support. In May 1973 the appellant
moved the divorce court for entry of judgment in her
favor and against the appellee for, among other things,
support for the children for the periods after each re-
spectively attained the age of 18 years. The court con-
cluded that on February 12, 1971, Sherri "became 18 years
of age, and under the provisions of [§] 15–2–1 Utah Code
Annotated 1953, thereby attained her majority. Defend-
ant is not obligated to plaintiff for maintenance and sup-
port of Sherri Lyn Stanton since that date." App. 23.
An order denying the appellant's motion was entered ac-
cordingly. *Id.*, at 24–25.

The appellant appealed to the Supreme Court of Utah.
She contended, among other things, that Utah Code Ann.
§ 15–2–1 (1953)* to the effect that the period of minority
for males extends to age 21 and for females to age 18,
is invidiously discriminatory and serves to deny due
process and equal protection of the laws, in violation of
the Fourteenth Amendment and of the corresponding

---

*"15–2–1. Period of minority.—The period of minority extends
in males to the age of twenty-one years and in females to that of
eighteen years; but all minors obtain their majority by marriage."

As is so frequently the case with state statutes, little or no legislative
history is available on § 15–2–1. The statute has its roots in a
territorial Act approved February 6, 1852, Comp. Laws of Utah,
1876, § 1035.

provisions of the Utah Constitution, namely, Art. I, §§ 7 and 24, and Art. IV, § 1. On this issue, the Utah court affirmed. 30 Utah 2d 315, 517 P. 2d 1010 (1974). The court acknowledged: "There is no doubt that the questioned statute treats men and women differently," but said that people may be treated differently "so long as there is a reasonable basis for the classification, which is related to the purposes of the act, and it applies equally and uniformly to all persons within the class." *Id.,* at 318, 517 P. 2d, at 1012. The court referred to what it called some "old notions," namely, "that generally it is the man's primary responsibility to provide a home and its essentials," *ibid.;* that "it is a salutary thing for him to get a good education and/or training before he undertakes those responsibilities," *id.,* at 319, 517 P. 2d, at 1012; that "girls tend generally to mature physically, emotionally and mentally before boys"; and that "they generally tend to marry earlier," *ibid.* It concluded:

> "[I]t is our judgment that there is no basis upon which we would be justified in concluding that the statute is so beyond a reasonable doubt in conflict with constitutional provisions that it should be stricken down as invalid." *Id.,* at 319, 517 P. 2d, at 1013.

If such a change were desirable, the court said, "that is a matter which should commend itself to the attention of the legislature." *Id.,* at 320, 517 P. 2d, at 1013. The appellant, thus, was held not entitled to support for Sherri for the period after she attained 18, but was entitled to support for Rick "during his minority" unless otherwise ordered by the trial court. *Ibid.,* 517 P. 2d, at 1014.

We noted probable jurisdiction. 419 U. S. 893 (1974).

## II

The appellee initially suggests that the support issue is moot and that, in any event, the appellant lacks standing. These arguments are related and we reject both of them.

A. The mootness suggestion is based on the propositions that both the appellant and Sherri are now over 21 and that neither possesses rights that "can be affected by the outcome of this proceeding." Brief for Appellee 9. At the time the case was before us on the jurisdictional statement, the appellee suggested that the case involved a nonjusticiable political question. Appellee's Motion to Dismiss 6–7. Each approach, of course, overlooks the fact that what is at issue is support for the daughter during her years between 18 and 21. If appellee, under the divorce decree, is obligated for Sherri's support during that period, it is an obligation that has not been fulfilled, and there is an amount past due and owing from the appellee. The obligation issue, then, plainly presents a continuing live case or controversy. It is neither moot nor nonjusticiable.

B. The suggestion as to standing is that the appellant is not of the age group affected by the Utah statute and that she therefore lacks a personal stake in the resolution of the issue. It is said that when the appellant signed the stipulation as to support payments, she took the Utah law as it was and thus waived, or is estopped from asserting, any right to support payments after the daughter attained age 18.

We are satisfied that it makes no difference whether the appellant's interest in any obligation of the appellee, under the divorce decree, for Sherri's support between ages 18 and 21, is regarded as an interest personal to appellant or as that of a fiduciary. The Utah court has described support money as "compensation to a spouse

for the support of minor children." *Anderson* v. *Anderson,* 110 Utah 300, 306, 172 P. 2d 132, 135 (1946). And the right to past due support money appears to be the supplying spouse's not the child's. *Larsen* v. *Larsen,* 5 Utah 2d 224, 228, 300 P. 2d 596, 598 (1956). See also *Baggs* v. *Anderson,* 528 P. 2d 141, 143 (Utah 1974). The appellant, therefore, clearly has a "personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Baker* v. *Carr,* 369 U. S. 186, 204 (1962); *Flast* v. *Cohen,* 392 U. S. 83, 102 (1968). We see nothing in the stipulation itself that is directed to the question when majority is reached for purposes of support payments or that smacks of waiver. In addition, the Uniform Civil Liability for Support Act has been in effect in Utah since 1957. Laws of Utah, 1957, c. 110, now codified as Utah Code Ann. §§ 78–45–1 through 78–45–13 (Supp. 1973). Section 78–45–4 specifically provides: "Every woman shall support her child." This is in addition to the mandate contained in § 78–45–3: "Every man shall support his wife and his child." "Child" is defined to mean "a son or daughter under the age of twenty-one years." § 78–45–2 (4). And § 78–45–12 states: "The rights herein created are in addition to and not in substitution [of] any other rights."

The appellant herself thus had a legal obligation under Utah law to support her daughter until Sherri became 21. That obligation, however, obviously was not in derogation of any right she might have against the appellee under the divorce decree. Her interest in the controversy, therefore, is distinct and significant and is one that assures "concrete adverseness" and proper standing on her part.

## III

We turn to the merits. The appellant argues that Utah's statutory prescription establishing different ages of majority for males and females denies equal protection; that it is a classification based solely on sex and affects a child's "fundamental right" to be fed, clothed, and sheltered by its parents; that no compelling state interest supports the classification; and that the statute can withstand no judicial scrutiny, "close" or otherwise, for it has no relationship to any ascertainable legislative objective. The appellee contends that the test is that of rationality and that the age classification has a rational basis and endures any attack based on equal protection.

We find it unnecessary in this case to decide whether a classification based on sex is inherently suspect. See *Weinberger* v. *Wiesenfeld,* 420 U. S. 636 (1975); *Schlesinger* v. *Ballard,* 419 U. S. 498 (1975); *Geduldig* v. *Aiello,* 417 U. S. 484 (1974); *Kahn* v. *Shevin,* 416 U. S. 351 (1974); *Frontiero* v. *Richardson,* 411 U. S. 677 (1973); *Reed* v. *Reed,* 404 U. S. 71 (1971).

*Reed,* we feel, is controlling here. That case presented an equal protection challenge to a provision of the Idaho probate code which gave preference to males over females when persons otherwise of the same entitlement applied for appointment as administrator of a decedent's estate. No regard was paid under the statute to the applicants' respective individual qualifications. In upholding the challenge, the Court reasoned that the Idaho statute accorded different treatment on the basis of sex and that it "thus establishes a classification subject to scrutiny under the Equal Protection Clause." *Id.,* at 75. The Clause, it was said, denies to States "the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute." *Id.,*

at 75–76. "A classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' *Royster Guano Co.* v. *Virginia,* 253 U. S. 412, 415 (1920)." *Id.,* at 76. It was not enough to save the statute that among its objectives were the elimination both of an area of possible family controversy and of a hearing on the comparative merits of petitioning relatives.

The test here, then, is whether the difference in sex between children warrants the distinction in the appellee's obligation to support that is drawn by the Utah statute. We conclude that it does not. It may be true, as the Utah court observed and as is argued here, that it is the man's primary responsibility to provide a home and that it is salutary for him to have education and training before he assumes that responsibility; that girls tend to mature earlier than boys; and that females tend to marry earlier than males. The last mentioned factor, however, under the Utah statute loses whatever weight it otherwise might have, for the statute states that "all minors obtain their majority by marriage"; thus minority, and all that goes with it, is abruptly lost by marriage of a person of either sex at whatever tender age the marriage occurs.

Notwithstanding the "old notions" to which the Utah court referred, we perceive nothing rational in the distinction drawn by § 15–2–1 which, when related to the divorce decree, results in the appellee's liability for support for Sherri only to age 18 but for Rick to age 21. This imposes "criteria wholly unrelated to the objective of that statute." A child, male or female, is still a child. No longer is the female destined solely for the home and the rearing of the family, and only the male for the

marketplace and the world of ideas. See *Taylor* v. *Louisiana*, 419 U. S. 522, 535 n. 17 (1975). Women's activities and responsibilities are increasing and expanding. Coeducation is a fact, not a rarity. The presence of women in business, in the professions, in government and, indeed, in all walks of life where education is a desirable, if not always a necessary, antecedent is apparent and a proper subject of judicial notice. If a specified age of minority is required for the boy in order to assure him parental support while he attains his education and training, so, too, is it for the girl. To distinguish between the two on educational grounds is to be self-serving: if the female is not to be supported so long as the male, she hardly can be expected to attend school as long as he does, and bringing her education to an end earlier coincides with the role-typing society has long imposed. And if any weight remains in this day to the claim of earlier maturity of the female, with a concomitant inference of absence of need for support beyond 18, we fail to perceive its unquestioned truth or its significance, particularly when marriage, as the statute provides, terminates minority for a person of either sex.

Only Arkansas, as far as our investigation reveals, remains with Utah in fixing the age of majority for females at 18 and for males at 21. Ark. Stat. Ann. § 57–103 (1971). See *Petty* v. *Petty*, 252 Ark. 1032, 482 S. W. 2d 119 (1972). Furthermore, Utah itself draws the 18–21 distinction only in § 15–2–1 defining minority, and in § 30–1–9 relating to marriage without the consent of parent or guardian. See also § 30–1–2 (4) making void a marriage where the male is under 16 or the female under 14. Elsewhere, in the State's present constitutional and statutory structure, the male and the female appear to be treated alike. The State's Constitution provides that the rights of Utah citizens to vote and hold office "shall not

16

be denied or abridged on account of sex," and that "[b]oth male and female citizens . . . shall enjoy equally all civil, political and religious rights and privileges," Art. IV, § 1, and, since long before the Nation's adoption of the Twenty-sixth Amendment in 1971, did provide that every citizen "of the age of twenty-one years and upwards," who satisfies durational requirements, "shall be entitled to vote." Art. IV, § 2. Utah's statutes provide that any citizen over the age of 21 who meets specified nonsex qualifications is "competent to act as a juror," Utah Code Ann. § 78–46–8, may be admitted to the practice of law, § 78–51–10, and may act as an incorporator, § 16–10–48, and, if under 21 and in need, may be entitled to public assistance, § 55–15a–17. The ages at which persons may serve in legislative, executive, and judicial offices are the same for males and females. Utah Const., Art. VI, § 5, Art. VII, § 3, and Art. VIII, § 2. Tobacco may not be sold, purchased, or possessed by persons of either sex under 19 years of age. §§ 76–10–104 and 76–10–105 (see Laws of Utah, 1974, §§ 39–40). No age differential is imposed with respect to the issuance of motor vehicle licenses. § 41–2–10. State adult education programs are open to every person 18 years of age or over. § 53–30–5. The Uniform Gifts to Minors Act is in effect in Utah and defines a minor, for its purposes, as any person "who has not attained the age of twenty-one years." § 75–15–2.11 (Supp. 1973). Juvenile court jurisdiction extends to persons of either sex under a designated age. §§ 55–10–64 and 55–10–77. Every person over the age of 18 and of sound mind may dispose of his property by will. § 74–1–1. And the Uniform Civil Liability for Support Act, noted above and in effect in Utah since 1957, imposes on each parent an obligation of support of both sons and daughters until age 21. §§ 78–45–2 (4), 78–45–3, and 78–45–4 (Supp. 1973).

This is not to say that § 15–2–1 does not have important effect in application. A "minor" may disaffirm his contracts. § 15–2–2. An "infant" must appear in court by guardian or guardian *ad litem*. Utah Rule Civ. Proc. 17 (b). A parent has a right of action for injury to, or wrongful death of, "a minor child." § 78–11–6. A person "[u]nder the age of majority" is not competent or entitled to serve as an administrator of a decedent's estate, § 75–4–4, or as the executor of a decedent's will. § 75–3–15 (1). The statute of limitations is tolled while a person entitled to bring an action is "[u]nder the age of majority." § 78–12–36. Thus, the distinction drawn by § 15–2–1 affects other rights and duties. It has pervasive effect, both direct and collateral.

We therefore conclude that under any test—compelling state interest, or rational basis, or something in between—§ 15–2–1, in the context of child support, does not survive an equal protection attack. In that context, no valid distinction between male and female may be drawn.

## IV

Our conclusion that in the context of child support the classification effectuated by § 15–2–1 denies the equal protection of the laws, as guaranteed by the Fourteenth Amendment, does not finally resolve the controversy as between this appellant and this appellee. With the age differential held invalid, it is not for this Court to determine *when* the appellee's obligation for his children's support, pursuant to the divorce decree, terminates under Utah law. The appellant asserts that, with the classification eliminated, the common law applies and that at common law the age of majority for both males and females is 21. The appellee claims that any unconstitutional inequality between males and females is to be remedied by treating males as adults at age 18, rather than by withholding the privileges of adulthood from

women until they reach 21. This plainly is an issue of state law to be resolved by the Utah courts on remand; the issue was noted, incidentally, by the Supreme Court of Utah. 30 Utah 2d, at 319, 517 P. 2d, at 1013. The appellant, although prevailing here on the federal constitutional issue, may or may not ultimately win her lawsuit. See *Harrigfeld* v. *District Court,* 95 Idaho 540, 511 P. 2d 822 (1973); *Commonwealth* v. *Butler,* 458 Pa. 289, 328 A. 2d 851 (1974); *Skinner* v. *Oklahoma,* 316 U. S. 535, 542–543 (1942).

The judgment of the Supreme Court of Utah is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

Mr. Justice Rehnquist, dissenting.

The Court views this case as requiring a determination of whether the Utah statute specifying that males must reach a higher age than females before attaining their majority denies females the equal protection of the laws guaranteed by § 1 of the Fourteenth Amendment to the United States Constitution. The Court regards the constitutionality of Utah Code Ann. § 15–2–1 (1953) as properly at issue because of the manner in which the Supreme Court of Utah approached and decided the case. But this Court is subject to constraints with respect to constitutional adjudication which may well not bind the Supreme Court of Utah. This Court is bound by the rule, "to which it has rigidly adhered, . . . never to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied," *Liverpool, N. Y. & Phila. S. S. Co.* v. *Commissioners of Emigration,* 113 U. S. 33, 39 (1885), and we try to avoid deciding constitutional questions which "come to us in highly abstract form," *Rescue Army* v. *Municipal Court,* 331 U. S. 549, 575 (1947). Fidelity to these longstanding

rules dictates that we have some regard for the factual background of this case, as fully outlined in the Court's opinion, before deciding the constitutional question that has been tendered to us.

The Utah statute which the Court invalidates "in the context of child support," *ante,* at 17, does not by its terms define the age at which the obligation of a divorced parent to support a child ceases. The parties concede that the Stantons could have provided in their property settlement agreement that appellee's obligation to support Sherri and Rick would terminate when both turned 18, when both turned 21, or when one turned 18 and the other turned 21. Tr. of Oral Arg. 4, 14, 23. This case arises only because appellant and appellee made no provision in their property settlement agreement fixing the age at which appellee's obligation to support his son or daughter would terminate. The Supreme Court of Utah, faced with the necessity of filling in this blank, referred to the State's general age-of-majority statute in supplying the terms which the parties had neglected to specify themselves.

Had the Supreme Court of Utah relied upon the statute only insofar as it cast light on the intention of the parties regarding the child support obligations contained in the divorce decree, there would be no basis for reaching the constitutionality of the statute. In supplying the missing term in an agreement executed between two private parties, a court ordinarily looks to the customs, mores, and practice of the parties in an attempt to ascertain what was intended. If, upon consideration of these factors, including the age-of-majority statute, the Utah Supreme Court had concluded that the Stantons intended to bestow more of their limited resources upon a son than a daughter, perhaps for the reasons stated in the opinion of that court, that strikes

me as an entirely permissible basis upon which to construe the property settlement agreement.

On the other hand, the Supreme Court of Utah may have concluded that, the parties having failed to specify this term of the agreement, the question became one of Utah statutory law rather than one of determining the intent of the parties. If that were its determination, the constitutionality of Utah Code Ann. § 15–2–1 (1953), would indeed be implicated in this case.

I do not think it possible to say with confidence which of these two approaches was taken by the Supreme Court of Utah in this case. In addition to this difficulty, there is another element of attenuation between the claim asserted on behalf of Sherri to be treated like her brother for purposes of child support, and the actual case before us. Utah has a comprehensive scheme dealing with child support in its Uniform Civil Liability for Support Act, Utah Code Ann. § 78–45–1 *et seq.* (Supp. 1973). Under that Act, "child" is defined as "a son or daughter under the age of twenty-one years," § 78–45–2 (4). Thus, for purposes of any direct claim by Sherri against appellee, Utah law treats her precisely as it does her brother. The claim asserted in this case is not by Sherri, but by her mother, and the source of any claim which the mother has against appellee necessarily arises out of the voluntary property settlement agreement which they executed at the time of their divorce.

These factors lead me to conclude that the issue which the Court says is presented by this case, and which it decides, cannot properly be decided on these facts if we are to adhere to our established policy of avoiding unnecessary constitutional adjudication. I would dismiss the appeal for that reason. *Rescue Army* v. *Municipal Court, supra; Socialist Labor Party* v. *Gilligan,* 406 U. S. 583 (1972).