**Nely L. JOHNSON et al.,
Plaintiffs,**

v.

**HEINEMANN CANDY CO., INC.,
et al., Defendants.**

**Civ. A. No. 72–C–481.**

United States District Court,
E. D. Wisconsin.

Nov. 18, 1975.

Nely L. Johnson, Sheila McEntee, Sara Joan Bales, Milwaukee, Wis., for plaintiffs.

Harry F. Franke and David J. Hase, Milwaukee, Wis., for defendants.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

This is an action challenging the enforcement of a restaurant's policy of refusing service to women customers. The complaint set forth claims under 42 U.S. C. § 1983, 42 U.S.C. § 1985(3), and § 246.15, Wis.Stats., and sought both declaratory and injunctive relief. Subject matter jurisdiction is present under 28 U.S.C. § 1343. Both the plaintiffs and defendants have filed motions for summary judgment and have stipulated to the relevant facts. For the reasons hereinafter indicated, plaintiffs' motion is granted and defendants' motion is denied.

### I.

Defendant Heinemann Candy Co., Inc., ("Heinemann") owns and operates a public restaurant, and defendant Thomas J. Burns is an officer and director. The restaurant is located at 102 East Wisconsin Avenue in the center of Milwaukee's downtown area.

Since around 1930, Heinemann has designated part of the restaurant as the "Men's Grill." It comprises about a quarter of the restaurant's total area and is located at the rear of the restaurant. Both table and counter service is provided, and the "Men's Grill" has its own cash register. The restaurant is open for business daily, except Sunday, from 7:00 a. m. to 8:00 p. m. Except on Saturday, during the noon hour from 11:00 a. m. to 2:00 p. m., the "Men's Grill" is open, and usually only men are served there except on rare occasions such as during a teachers' convention.

About 80 to 85% of the customers of the restaurant are women, and most of the women are on a lunch break from

their jobs. Male customers can be seated in the "Men's Grill" whether or not they are businessmen. No dress code is enforced other than a requirement that all customers wear shoes. The waitresses and hostesses are women, as is the manager.

Following attempts by women to eat in the "Men's Grill," Heinemann sought to make complaints against those women, and therefore contacted Assistant City Attorney Patrick Madden through one of its attorneys, Thomas J. Drought. During a telephone conversation on March 3, 1970, Madden told Drought that he had met with Captain Isermann and several sergeants of the Milwaukee Police Department and had established procedures for handling complaints from Heinemann regarding disruption of its business. Madden further informed Drought that if someone from Heinemann contacted the police and indicated that there was a disturbance or that people were seating themselves contrary to Heinemann's procedures, the employees would ask those persons to leave. If they refused, a police officer would obtain their names so that Heinemann could take legal action. The prosecution of any complaint would have to be undertaken by Heinemann as the city would not do so on its own initiative.

On March 4, 1970, Drought sent a letter to Madden, confirming his understanding of what the Assistant City Attorney had told him the day before.

Pursuant to this agreement, during 1970–1971, Heinemann contacted the police on at least one occasion.

On July 12, 1972, at approximately 12:00 noon, plaintiff Nely L. Johnson went to the restaurant with two male friends to eat lunch. They entered the "Men's Grill," sat at the lunch counter, and asked to be served. Plaintiff Johnson was told by a waitress and the manager that she would not be served in the "Men's Grill" but had to eat in the other section of the restaurant. On August 1, 1972, plaintiff Johnson and some friends returned to the restaurant, sat at the counter, and asked for service. She was refused service, as were all women and the men accompanying them who were seated in the "Men's Grill." Plaintiff Sheila McEntee was among those who were refused service. On July 21 and August 1, 1972, there were no signs requiring "seating by hostess" in the "Men's Grill" area. Plaintiffs left the restaurant at approximately 1:00 p. m.

The next day, August 2, 1972, plaintiff Johnson joined some friends at a table in the "Men's Grill" at about 12:00 noon. A sign near the cash register required seating by hostess only. The hostess refused to seat any women and men accompanying them. Plaintiff Johnson was refused service, as was plaintiff Mona Perry who had entered with her husband and joined some friends at a table. The conduct of the plaintiffs and the other men and women accompanying them was not loud, boisterous, or violent.

Defendant Burns and attorney Drought placed telephone calls to persons in the Milwaukee Police Department who were aware of Heinemann's problem. Three police officers arrived at about 12:30 p. m. Attorney Drought spoke to them and advised them of the restaurant's policy, and showed the officers a copy of his letter to Assistant City Attorney Madden of March 4, 1970.

The officers proceeded to talk to the people seated in the "Men's Grill," required everyone to show some identification, and wrote down names and addresses. All the women, together with the men accompanying them, were asked to leave the "Men's Grill" and told to appear at the offices of the Milwaukee City Attorney at 2:00 p. m. Men eating alone in the restaurant were not disturbed, although many had seated themselves.

Defendant Thomas J. Burns, Cynthia Burns, and attorney Drought arrived at the City Attorney's office before 2:00 p. m. At about 2:15 p. m., those asked

to appear there were ushered into the office of Assistant City Attorney David Mogilka.

## II.

Summary judgment on plaintiffs' § 1983 claim can be granted if it is established that the defendants were acting under color of state law in enforcing the policy of refusing service to women customers in the "Men's Grill" and that the plaintiffs were thereby denied the equal protection of the laws guaranteed them under the Fourteenth Amendment. Since both these requisites are satisfied here, it is unnecessary to discuss plaintiffs' claims under 42 U.S.C. § 1985(3) and § 246.15, Wis.Stats.

### A. State Action

■ The dichotomy between discriminatory action by the state, which is prohibited by the Fourteenth Amendment, and purely private conduct, which is not, was first enunciated in *The Civil Rights Cases,* 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883), and reaffirmed in *Shelley v. Kraemer,* 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948); *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961); and *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972). As was said in *Shelley v. Kraemer,* supra, 334 U.S. at 13, 68 S.Ct. at 842, the Amendment "erects no shield against merely private conduct, however discriminatory or wrongful." While this principle is easily stated, the presence or absence of state involvement must be judged in light of each controversy, since "[o]nly by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance." *Burton v. Wilmington Parking Authority,* supra, 365 U.S. at 722, 81 S.Ct. at 960.

■■ Plaintiffs have argued that the fact that Heinemann has restaurant, cigarette, and soft drink licenses is sufficient to establish the requisite state action. But the "mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment." *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 350, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974). There must be "a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Id.,* at 351, 95 S.Ct. at 453. In *Moose Lodge No. 107 v. Irvis,* supra, the Court held that the plaintiff was entitled to an injunction restraining enforcement of a state regulation insofar as the regulation required Moose Lodge to comply with the provisions of its bylaws and constitution containing racially discriminatory provisions. Plaintiffs have not identified any state regulation which has a "sufficiently close nexus" with Heinemann's policy of refusing service to women in the "Men's Grill," and their argument must therefore be rejected.

■ Here, however, the fact that the defendants sought and obtained an agreement with the Milwaukee City Attorney and the Milwaukee Police Department for the enforcement of the discriminatory policy, together with the fact that the agreement was put into effect on August 2, 1972, establishes a sufficient involvement by the state with the discriminatory policy. In *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), the Court held that if an employee of a public restaurant and a policeman reached an understanding to deny service to a white person in the company of blacks or to cause the white's subsequent arrest, the involvement of the state official in the conspiracy would be sufficient to satisfy the "color of law" requirement of § 1983. 398 U.S. at 150–152, 90 S.Ct. 1598. The *Adickes* ruling is squarely applicable here. Defendants solicited the assistance of the Milwaukee City Attorney and the Police Department in enforcing and maintaining their policy of refusing service to women customers in the "Men's Grill." An agreement was reached which

detailed how city officials would assist in perpetuating the discriminatory policy. This agreement had the effect of encouraging Heinemann to retain the policy, since if a need arose for its enforcement, the power of the state was readily available. Finally, the agreement provided the procedure which was used in denying plaintiffs' service on August 2, 1972.

■ The involvement of the city officials in making an agreement with Heinemann to enforce the policy and the subsequent action pursuant to the agreement imbued the discriminatory policy with sufficient state involvement to satisfy § 1983's requirement that the actions be taken under color of law. Where private persons, such as the defendants, are "jointly engaged with state officials in the prohibited action, [they] are acting 'under color' of law for purposes of the statute." *United States v. Price*, 383 U.S. 787, 794, 86 S.Ct. 1152, 1157, 16 L.Ed.2d 267 (1966).

B. *Equal Protection*

■ Heinemann's policy of refusing service to women customers in the "Men's Grill" is, quite obviously, a classification based on sex. The Supreme Court has not yet decided whether sex-based classifications are "suspect" and subject to "strict scrutiny." See, *Stanton v. Stanton*, 421 U.S. 7, 95 S.Ct. 1373, 43 L.Ed.2d 688 (1975), and cases cited therein. The Court has, however, applied the principle that a sex-based classification " 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' *Royster Guano Co. v. Virginia*, 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989 (1920)." *Reed v. Reed*, 404 U.S. 71, 76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225 (1971).

■ Defendants' sole contention has been that their policy is necessitated by a market demand for a restaurant which excludes women. The affidavit of defendant Burns recites that—

"The Wisconsin Avenue restaurant is located in the midst of the downtown Milwaukee financial district in an area where many professional and business men maintain their offices. These men constitute a significant part of the market served by Heinemann's Wisconsin avenue restaurant. Heinemann's practice of reserving certain seating for men customers in a portion of this restaurant is the result of the demand for such reserved seating from regular customers. Heinemann believes it would lose the business of a significant number of these regular customers if it abandoned its reserved seating practice."

Even assuming that economic gain is a permissible reason for discriminating on the basis of sex, the defendants here have not sufficiently established that their belief in such a demand for the exclusion of women is reasonable.

■ Two of the three plaintiffs in this action are attorneys who are within the "professional and business" group which the "Men's Grill" is designed to serve. Further, defendants have stipulated that most of the women patronizing the restaurant are working women. Finally, judicial recognition of the evolving status of women means that Heinemann's implied premise that there are no business or professional women identically situated to male customers is simply fantasy. *Stanton v. Stanton*, supra, 421 U.S. 7, 95 S.Ct. 1373, 43 L.Ed. 2d 688; *Taylor v. Louisiana*, 419 U.S. 522, 535 n. 17, 95 S.Ct. 692, 42 L.Ed.2d 690 .(1975); *Women's Liberation Union of Rhode Island v. Israel*, 379 F.Supp. 44 (D.R.I.1974), aff'd 512 F.2d 106 (1st Cir. 1975).

■ Even if defendants could establish that the "Men's Grill" was serving an identifiable group of men who desired the absence of women during lunch, the misogynous prejudices of such a group are not a sufficient justification under the equal protection clause. *Seidenberg v. McSorleys' Old Ale House, Inc.*, 317 F.Supp. 593, 605–606 (S.D.N.Y.1970).

See also, *Bennett v. Dyer's Chop House, Inc.*, 350 F.Supp. 153 (N.D.Ohio 1972).

Defendants have, therefore, not established that there is any difference between men and women customers which justifies the policy of excluding women from the "Men's Grill." Since the policy violates *Reed's* command that "all persons similarly circumstanced shall be treated alike," supra 404 U.S. at 76, 92 S.Ct. at 254, it must be held to violate the equal protection of the laws guaranteed by the Fourteenth Amendment.

### III.

In summary, where a public restaurant establishes a policy of excluding women customers and enlists the aid of the state in effectuating the policy, and where the restaurant can demonstrate no legitimate goal which is furthered by the classification, the constitutional rights of the excluded women have been transgressed. Plaintiffs are, therefore, entitled to the relief they seek.

It is therefore ordered that plaintiffs' motion for summary judgment is granted, and defendants' motion for summary judgment is denied.