Cite as: 587 U. S. \_\_\_\_ (2019)  1

# SUPREME COURT OF THE UNITED STATES

PATRICK HENRY MURPHY *v.* BRYAN COLLIER,
EXECUTIVE DIRECTOR, TEXAS DEPARTMENT
OF CRIMINAL JUSTICE, ET AL.

ON APPLICATION FOR STAY

No. 18A985.   Decided March 28, 2019

The application for a stay of execution of sentence of death presented to JUSTICE ALITO and by him referred to the Court is granted. The State may not carry out Murphy's execution pending the timely filing and disposition of a petition for a writ of certiorari unless the State permits Murphy's Buddhist spiritual advisor or another Buddhist reverend of the State's choosing to accompany Murphy in the execution chamber during the execution.

JUSTICE THOMAS and JUSTICE GORSUCH would deny the application for a stay of execution.

JUSTICE KAVANAUGH, concurring in grant of application for stay.

As this Court has repeatedly held, governmental discrimination against religion—in particular, discrimination against religious persons, religious organizations, and religious speech—violates the Constitution. The government may not discriminate against religion generally or against particular religious denominations. See *Morris County Bd. of Chosen Freeholders* v. *Freedom from Religion Foundation*, 586 U. S. \_\_\_, \_\_\_ (2019) (statement of KAVANAUGH, J., respecting denial of certiorari) (slip op., at 2); *Trinity Lutheran Church of Columbia, Inc.* v. *Comer*, 582 U. S. \_\_\_, \_\_\_–\_\_\_ (2017) (slip op., at 13–14); *Larson* v. *Valente*, 456 U. S. 228, 244 (1982). In this case, the relevant Texas policy allows a Christian or Muslim inmate to have a state-employed Christian or Muslim religious adviser present either in the execution room *or* in the

adjacent viewing room. But inmates of other religious
denominations—for example, Buddhist inmates such as
Murphy—who want their religious adviser to be present
can have the religious adviser present *only* in the viewing
room and *not* in the execution room itself for their execu-
tions. In my view, the Constitution prohibits such denom-
inational discrimination.

In an equal-treatment case of this kind, the government
ordinarily has its choice of remedy, so long as the remedy
ensures equal treatment going forward. See *Stanton* v.
*Stanton*, 421 U. S. 7, 17–18 (1975). For this kind of claim,
there would be at least two possible equal-treatment
remedies available to the State going forward: (1) allow all
inmates to have a religious adviser of their religion in the
execution room; or (2) allow inmates to have a religious
adviser, including any state-employed chaplain, only in
the viewing room, not the execution room. A State may
choose a remedy in which it would allow religious advisers
only into the viewing room and not the execution room
because there are operational and security issues associat-
ed with an execution by lethal injection. Things can go
wrong and sometimes do go wrong in executions, as they
can go wrong and sometimes do go wrong in medical pro-
cedures. States therefore have a strong interest in tightly
controlling access to an execution room in order to ensure
that the execution occurs without any complications,
distractions, or disruptions. The solution to that concern
would be to allow religious advisers only into the viewing
room.

In any event, the choice of remedy going forward is up to
the State. What the State may not do, in my view, is allow
Christian or Muslim inmates but not Buddhist inmates to
have a religious adviser of their religion in the execution
room.*

––––––––––

＊Under all the circumstances of this case, I conclude that Murphy

made his request to the State in a sufficiently timely manner, one month before the scheduled execution.