# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-KA-00704-COA

RICHARD GIBSON A/K/A RICHARD CHARLES        APPELLANT
GIBSON, JR.

v.

STATE OF MISSISSIPPI        APPELLEE

DATE OF JUDGMENT:      05/26/2023
TRIAL JUDGE:      HON. DEBRA W. BLACKWELL
COURT FROM WHICH APPEALED:      FRANKLIN COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:      OFFICE OF STATE PUBLIC DEFENDER
     BY: JUSTIN TAYLOR COOK
ATTORNEY FOR APPELLEE:      OFFICE OF THE ATTORNEY GENERAL
     BY: ALEXANDRA LEBRON
DISTRICT ATTORNEY:      SHAMECA SHANTE' COLLINS
NATURE OF THE CASE:      CRIMINAL - FELONY
DISPOSITION:      AFFIRMED - 01/14/2025
MOTION FOR REHEARING FILED:

### BEFORE WILSON, P.J., WESTBROOKS AND McDONALD, JJ.

### WILSON, P.J., FOR THE COURT:

¶1. Following a jury trial, Richard Gibson was convicted of first-degree murder and sentenced to life imprisonment. On appeal, Gibson argues that the trial court committed plain error by allowing Gibson's wife to testify against him and that the jury's verdict is contrary to the overwhelming weight of the evidence. We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. In September 2022, Gibson shot and killed his brother-in-law Billy Brown following an argument over some missing bullets. Gibson was indicted for first-degree murder, and his jury trial was held in the Franklin County Circuit Court in May 2023.

¶3.    Deputy Josh Evans of the Franklin County Sheriff's Office testified that he responded to the shooting, which occurred at Gibson's house. When Evans arrived at the crime scene, Gibson's wife, KaToya, was "yelling and screaming" that Gibson had "shot [her] brother," Brown. When Evans asked KaToya where the shooter was, she pointed across the road, where Gibson emerged from behind a vehicle carrying a gun.

¶4.    Evans ordered Gibson to drop the gun, which he did. Evans collected the gun, a Ruger .380, and a spent shell casing from the crime scene. Gibson told Evans to "check the cameras," referring to a security system installed in the house. The video showed the moments before and after the shooting and was played for the jury. Based on his review of the video, Evans did not believe Brown was the aggressor or that Brown was armed prior to the shooting. Gibson and Brown had been arguing because Gibson thought Brown had stolen some bullets from him. Evans estimated that Brown weighed 300 pounds—about twice as much as Gibson. Evans noted that Gibson had a cut on his ear but no other injuries.

¶5.    KaToya testified that Brown had borrowed her car on the day of the shooting. While Brown had the car, Gibson asked KaToya to call Brown and question him about Gibson's missing bullets. KaToya's mother, Annette Walker, later returned the car, which added to Gibson's suspicions that Brown had stolen the bullets. Later in the evening, while Gibson and KaToya were in bed, Brown sent a text message to them that he was on his way to their house. About fifteen minutes later, KaToya heard Brown in their house. Brown was in the living room playing with KaToya's three children and her goddaughter. Gibson got out of bed, and Katoya heard him "ask [Brown] about the bullets." Next, she heard her children

2

"scream so [she] jumped out of the bed and ran" to the living room. KaToya testified that Brown "had [Gibson] over the side of the couch" and punched Gibson three times. KaToya separated the men, but after she saw Gibson "trying to get in his pocket," she hurried out of the house with the children. At trial, KaToya initially testified that she could not recall whether Gibson had a gun. However, after her memory was refreshed with her prior statement to Deputy Evans, she testified that she saw Gibson with a gun. When KaToya saw the gun, she and the children ran outside, leaving Gibson and Brown alone in the house. KaToya started to walk back toward the house to check on the men, but Gibson walked out and said, "[C]all the police man, that man been hit." KaToya testified that she did not hear a gunshot and did not know exactly when Brown was shot.

¶6.    Walker, who lived near KaToya and Gibson, testified that on the evening of the shooting, her grandchildren ran to her house and told her that Gibson had shot Brown. When she reached her daughter's house, Gibson was standing at a neighbor's house with a gun. Walker asked Gibson why he shot Brown, and Gibson said, "I just shot him in the arm to teach him a lesson."

¶7.    Franklin County Coroner Billy Gill testified that Brown sustained a gunshot wound to his upper arm or left shoulder. The bullet did not exit Brown's body and ended up in his heart. Gill testified that "[t]he cause and manner [of death] was homicide due to gunshot wound to the shoulder that went into his chest."

¶8.    Gibson testified in his own defense. He stated that KaToya woke him up and told him that Brown was at their house. According to Gibson, he walked into the living room and

3

asked Brown about the missing bullets, and Brown "just straight attacked" him without saying a word. Gibson testified that Brown "pinned [him] on the couch" and began punching him in the face and head. Gibson testified that he grabbed his gun and "fired one self-defense shot." Gibson stated that he did not intend to kill Brown; rather, his intent was "[t]o get to safety" and "[t]o remove [himself] from immediate danger."

¶9. The jury found Gibson guilty of first-degree murder. The court sentenced Gibson to life imprisonment in the custody of the Department of Corrections as a habitual offender. Gibson filed a motion for judgment notwithstanding the verdict or new trial, which was denied, and a notice of appeal.

## ANALYSIS

¶10. On appeal, Gibson argues that (1) the trial court committed plain error in allowing KaToya to testify against him and (2) the jury's verdict is contrary to the overwhelming weight of the evidence.

### I. KaToya's Testimony

¶11. Gibson argues that the trial court erred by allowing his wife to testify against him, but he did not object to KaToya's testimony at trial. The "failure to object to testimony [at trial] waives any assignment of error on appeal." *Johnson v. State*, 477 So. 2d 196, 214 (Miss. 1985). Nevertheless, Gibson argues that the trial court committed *plain error* in allowing KaToya to testify.

¶12. Subject to certain exceptions, one spouse is not considered competent to testify in a case in which the other spouse is a party "unless both [spouses] consent." MRE 601(b).

4

Specifically, Mississippi Rule of Evidence 601(b) provides:

> (b) **Competency of Spouse.** If one spouse is a party, the other spouse may not testify as a witness in the case *unless both consent*, except:
>
> > (1)     when called as a witness by the spouse who is a party;
> >
> > (2)     in a controversy between them; or
> >
> > (3)     in a criminal case for:
> >
> > > (A)     a criminal act against a child;
> > >
> > > (B)     contributing to the neglect or delinquency of a child;
> > >
> > > (C)     desertion or nonsupport of a child under 16; and
> > >
> > > (D)     abandonment of a child.

MRE 601(b) (emphasis added).

¶13. However, our Supreme Court has held that "[i]f a party does not object to the competency of a witness when presented, such objection is waived if the party knew of the facts constituting this incompetency at the time the evidence was offered." *Sandlin v. State*, 156 So. 3d 813, 819 (¶18) (Miss. 2013) (quoting *Brewer v. State*, 233 So. 2d 779, 781 (Miss. 1970)). The Supreme Court further held that if the party "does not then object *he, in effect, consents*, and he will not be permitted to experiment with the evidence and see whether it is helpful or hurtful to him, and then later to move to have such evidence excluded, provided the facts constituting incompetency were then known." *Id.* (emphasis added) (quoting *Brewer*, 233 So. 2d at 781).

¶14. In *Sandlin*, a wife did not object to her husband's testimony that implicated her in the murder of her husband's son. *Id.* at 818 (¶18). On appeal, the wife argued that the trial court

5

committed "plain error" by allowing her husband to testify because "she did not consent." *Id.* (¶17). However, the Supreme Court rejected her argument, holding that her claim was "barred from review." *Id.* at 819 (¶19). The trial court did not err because the wife, "in effect, consent[ed]" to her husband's testimony when she did not object to it. *Id.* at (¶18) (quoting *Brewer*, 233 So. 2d at 781).

¶15. *Sandlin* is on all fours with this case. Gibson, "in effect, consent[ed]" to KaToya's testimony when he failed to object. Therefore, the trial court did not commit any error, let alone "plain error," by permitting her to testify.

## II.    Weight of the Evidence

¶16. Gibson also argues that the jury's verdict is contrary to the overwhelming weight of the evidence because the evidence showed that he acted in reasonable self-defense.

¶17. We review a challenge to the weight of the evidence, which addresses the denial of a motion for a new trial, for abuse of discretion because the "trial judge is in the best position to view the trial." *Little v. State*, 233 So. 3d 288, 291-92 (¶¶18, 21) (Miss. 2017) (quoting *Amiker v. Drugs For Less Inc.*, 796 So. 2d 942, 947 (¶16) (Miss. 2000)). We also afford great deference to the jury's verdict and do not assume the role of juror on appeal. *Id.* at 289 (¶1). As the Mississippi Supreme Court has explained,

> We do not reweigh evidence. We do not assess the witnesses' credibility. And we do not resolve conflicts between evidence. Those decisions belong solely to the jury. Our role as [an] appellate court is to view the evidence in the light most favorable to the verdict and disturb the verdict only when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.

*Id.*

6

¶18. The State presented significant evidence of Gibson's guilt. There is no dispute that Gibson shot and killed Brown. KaToya testified that she "separated" the men before Gibson pulled out a gun. Walker testified that Gibson himself told her that he shot Brown "to teach him a lesson"—not in self-defense. The jurors were also able to watch a video of the events before and after the fatal encounter and draw their own inferences regarding Brown's demeanor and Gibson's demeanor. The trial court properly instructed the jury on Gibson's claim of self-defense, but the jurors rejected that argument and found Gibson guilty of first-degree murder. Viewing the evidence in the light most favorable to the verdict, we cannot say that the verdict was contrary to the overwhelming weight of the evidence or that the trial judge abused her discretion by denying Gibson's motion for a new trial.

## CONCLUSION

¶19. Gibson, in effect, consented to KaToya's testimony when he failed to object at trial, the jury's verdict is not contrary to the overwhelming weight of the evidence, and the trial judge did not abuse her discretion by denying Gibson's motion for a new trial.

¶20. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., WESTBROOKS, McDONALD, McCARTY, EMFINGER AND WEDDLE, JJ., CONCUR. LAWRENCE, J., CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES, C.J.; WESTBROOKS AND WEDDLE, JJ., JOIN IN PART. ST. PÉ, J., NOT PARTICIPATING.**

**LAWRENCE, J., CONCURRING:**

¶21. I concur with the majority opinion in this case. I write to raise a concern about our continued attachment to spousal competency rules that are no longer necessary in our modern legal society. Spousal competency rules do little to protect the sanctity of marriage. They do,

7

however, provide the opportunity and potential for the justice system to reach improper and wrong results. I believe it is time for Mississippi to strike Mississippi Rule of Evidence 601 from the rules of evidence and let Mississippi Rule of Evidence 504 control whether a spouse should be prohibited from testifying. Alternatively, Mississippi should add a violent crime exception to Rule 601.

¶22. For purposes of discussion and clarification of the position I take in this separate opinion, assume a defendant is married to his spouse, and the defendant is charged with a crime of violence against another individual. Unknown to the defendant, the spouse actually observed strange actions of the defendant after the crime of violence in an effort to cover up the crime. Also, assume the defendant later admitted to the spouse that he actually committed the crime. Finally, assume the spouse was so distraught over what she was told and what she observed, she told her best friend everything shortly after it happened. The spouse leaves the defendant but cannot afford to hire an attorney to obtain a divorce. Further, the defendant refuses to agree to a divorce, and the spouse has no fault grounds under Mississippi law to force the divorce issue here. So, the spouse and the defendant are married and living separate lives when years later, the defendant is charged with the crime of violence against the other individual. If the State of Mississippi tried to call the spouse as a witness at the trial, the defendant could object and prevent the spouse from testifying under Mississippi's present rule of competency. The jury would not hear what the spouse observed as evidence because of a rule designed in medieval times when women were considered chattel of their husbands. The potential rises for a defendant/husband to be found not guilty when he clearly committed

8

the crime. The important and legitimate government interest in protecting its citizens, enforcing its law, and ensuring legal results is based in truth, and justice would stand subservient to our attempt to protect an already-broken marriage (under the example I gave). How is this possible? We can look at the applicable rule for its effect.

¶23.	Mississippi Rule of Evidence 601 prohibits a spouse from testifying against the other, unless one of the specific exceptions apply. The rule states that if one spouse is a party, the other spouse may not testify as a witness in the case unless they both consent, except

> (1) when called as a witness by the spouse who is a party;
> (2) in a controversy between them; or
> (3) in a criminal case for:
>> (A) a criminal act against a child;
>> (B) contributing to the neglect or delinquency of a child;
>> (C) desertion or nonsupport of a child under 16; and
>> (D) abandonment of a child.

MRE 601(b). Under the example I gave, the defendant would not call the spouse as a witness. Further, the criminal charge is not a controversy between the spouses, so the first two exceptions would not apply. Under Rule 601(b)(3), a child is not the victim of the crime of violence, so those exceptions would not apply either.[1] Under our present rule, the spouse would not be a competent witness to testify as to what she actually observed.

¶24.	In *Trammel v. United States*, 445 U.S. 40, 46 (1980), the United States Supreme Court

---

[1] It is important to note that I am not advocating for a suspension of Mississippi Rule of Evidence 504, which makes private communications between a husband and wife privileged and not admissible evidence. What the defendant/husband told his spouse would not be admissible evidence, but the spouse's observations of the defendant's behavior after committing the crime of violence and the spouse's statements to her friend about those observations could be admissible testimony if certain conditions are met under the hearsay rules like Rule 801. But for the competency rule in Rule 601, the testimony described above would be admissible.

reevaluated its previous decision that barred the testimony of one spouse against the other unless both consented. In *Trammel*, the defendant and his wife were trafficking drugs. *Id.* at 42. The wife was arrested and agreed to "cooperate with the Government" by testifying against her husband under a grant of use immunity. *Id.* The husband asserted his claim of spousal disqualification to prevent his wife from testifying. *Id.* The district court ruled that the wife could only testify to acts by her husband that she observed and communication by her husband that was made in the presence of a third person. *Id.* at 43. The husband was found guilty, and he appealed arguing the district court erred when it allowed the adverse testimony of his wife. *Id.* The Tenth Circuit Court of Appeals upheld the conviction and concluded that there was no reported decisions that prohibited "the voluntary testimony of a spouse who appears as an unindicted co-conspirator under grant of immunity from the Government in return for her testimony." *Id.* On writ of certiorari, the Supreme Court held that the spousal disqualification claimed by the defendant should be modified because of its "ancient roots." Spousal disqualification arose from two legal justifications from "medieval jurisprudence." *Id.* at 44. First, a defendant "was not permitted to testify in his own behalf because of his interest in the proceeding." *Id.* Second, "the concept that husband and wife were one, and that since the woman had no recognized separate legal existence, the husband was that one." *Id.* It followed, then, that inadmissible evidence from "the lips of the defendant-husband was also inadmissible from his wife." *Id.* Thus, the wife was deemed incompetent to testify against her husband. *See id.* The Supreme Court stated that these "ancient foundations . . . have long since disappeared." *Id.* at 52.

10

> Nowhere in the common-law world—indeed in any modern society—is a woman regarded as chattel or demeaned by denial of a separate legal identity and the dignity associated with recognition as a whole human being. Chip by chip, over the years those archaic notions have been cast aside so that "[n]o longer is the female destined solely for the home and the rearing of the family, and only the male for the marketplace and the world of ideas."

*Id.* (citing *Stanton v. Stanton*, 421 U.S. 7, 14-15 (1975)). Furthermore, allowing the defendant-spouse to disqualify the other spouse from testifying does not simply limit confidential communication between the couple, but it allows for a defendant to "exclude all adverse spousal testimony" that contradicts the concept that "the public . . . has a right to every man's evidence." *Id.* at 45, 50 (citing *United States v. Bryan*, 339 U.S. 323, 331 (1950)). The Supreme Court determined that allowing the defendant-spouse to invoke spousal disqualification was too broad of a privilege when it came to asserting the truth with probative evidence in the administration of criminal justice. *Id.* at 50-51.

¶25.    Some states followed in *Trammel*'s footsteps and allowed spouses to be competent to testify against each other without consent from the other in criminal cases.[2] Other states, however, took *Trammel* a step further and abandoned the competency rule of spouses altogether and allowed the spousal confidential-communication privilege to control.[3] I

---

[2] The following state statutes entitle the witness-spouse alone to assert the privilege: Alabama Code section 12-21-227 (1975); California Evidence Code Annotated Sections 970-973; Connecticut General Statute Annotated 54-84a (1979); Georgia Code Annotated Section 24-5-503(a); Massachusetts General Laws Annotated ch. 233, Section 20; North Carolina General Statutes Annotated Section 8-57(b); Ohio Rule of Evidence 601; Road Island General Laws Section 12-17-10 (1970).

[3] The following state statutes abolished the spousal privilege in criminal cases: Arkansas Rule of Evidence 601; Florida Statute Annotated Sections 90.501, 90.504 (1979); Illinois Compiled Statutes Annotated Chapter 725 § 5/115-14; Kansas Statute Annotated Sections 60–407, 60–428 (1976); Maine Rule of Evidence 601; New Hampshire Rule of

believe Mississippi, too, should strike spousal competency under Mississippi Rule of Evidence 601 and allow Mississippi Rule of Evidence 504 to control when spousal evidence is admissible in courts.

¶26. In the alternative, a narrowly crafted violent-crime exception could be recognized and added to Mississippi Rule of Evidence 601. That amended rule could allow a spouse to testify when the testimony would not be privileged under Rule 504 and is relevant and admissible in a criminal case concerning a crime of violence. The violent crime exception could be added to Rule 601 and state "where the Spouse has relevant and admissible evidence as to a crime of violence committed against another." States such as Pennsylvania and Nebraska understand the importance of allowing spouses to testify against each other in cases of violent crimes. Pennsylvania does not allow spousal incompetency "in any criminal proceeding in which one of the charges pending against the defendant includes murder, involuntary deviate sexual intercourse, or rape." 42 Penn. Cons. Stat. § 5913. Nebraska has a similar statute that allows for the spousal incompetency to be waived "[i]n any criminal case where the crime charged is a crime of violence, bigamy, incest, or any crime committed by one against the person or property of the other." Neb. Rev. Stat. § 27-505.

¶27. The Mississippi Supreme Court has already held in some cases that a spouse can testify without consent as a victim against the other spouse in a criminal case under the "controversy between them" exception in Mississippi Rule of Evidence 601(2). *Godbolt v.*

Evidence 601; New York Criminal Procedure section 60.20; North Dakota Rule of Evidence 601; Oklahoma Statutes Annotated, Title 12, Section 2601; South Dakota Codified Laws Section 19-19-601; Tennessee Rule of Evidence 601; Vermont Statute Annotated, Title 12, Section 1605 (1973).

*State*, No. 2020-DP-00440-SCT, 2024 WL 976588, 21 (¶108) (Miss. Mar. 7, 2024); *Meeks v. State* 604 So. 2d 748, 754 (Miss. 1992); *Maiben v State*, 405 So. 2d 87, 90 (Miss. 1981); *see also Moates v. State*, 379 So. 3d 928, 937 (¶40) (Miss. Ct. App. 2024). It defies logic that a spouse can testify against the other when the spouse is the victim but can be "incompetent" to testify when the victim is a different individual. The same rules of evidence apply, and the State's same interests apply in ensuring enforcement of its law, protecting victims and society at large from repeated crimes of violence, and ensuring justice is served based on truthful information. Further, if a defendant can hide truthful information under spousal competency rules, then the likelihood of erroneous results and potentially wrongful convictions can occur.

¶28. The need for juries and judges to hear all relevant evidence in the administration of criminal justice is vital to guaranteeing the criminal justice system gets it right in its quest for truth and justice. Mississippi has an overwhelming public interest in making sure a trial is indeed a search for the truth, and outdated and archaic rules of competency should not prevent the jury from hearing otherwise admissible relevant evidence.

¶29. Rules of competency should not prevent the jury from hearing important evidence from the defendant's spouse solely to protect marital harmony. It is likely that a relationship between a spouse who witnessed his or her spouse commit an act of violence has already lost its harmony. In the example I gave at the beginning of this opinion, the marriage was already broken, and no further harm to it could occur. Instead of trying to protect one broken marriage, Mississippi should protect a more vital and bigger interest in holding those

13

committing crimes of violence accountable through the criminal justice system. I respectfully suggest that Rule 601 be modified or abolished. Marital competency rules from a bygone era should not inhibit the essential function and purpose of the criminal justice system. Trials, which are a search for the truth, should not be subjected to manipulation and abused by outdated marital legal theories that do nothing in aiding the administration of justice but could do everything in allowing the guilty to potentially to avoid accountability and the innocent to be potentially wrongfully convicted.

**BARNES, C.J., JOINS THIS OPINION. WESTBROOKS AND WEDDLE, JJ., JOIN THIS OPINION IN PART.**