Lucy G. Childs, Respondent, v Theodore Q. Childs, Appellant.

Second Department, July 11, 1979

APPEARANCES OF COUNSEL

*John J. Von Der Lieth* for appellant and appellant *pro se.*

*Lans Feinberg & Cohen (Deborah E. Lans* and *Robert Stephan Cohen* of counsel), for respondent.

*Robert Abrams, Attorney-General (Robert J. Schack* and *George D. Zuckerman* of counsel), appearing pursuant to section 71 of the Executive Law.

## OPINION OF THE COURT

O'CONNOR, J. P.

We are called upon by the Supreme Court of the United States to review a previous decision of this court in light of *Orr v Orr* (440 US 268; see *Childs v Childs,* 60 AD2d 639, mot to dismiss app granted 43 NY2d 946, remanded 440 US 952). This in turn requires us to test the constitutionality of section 237 of the Domestic Relations Law under a post-*Orr* light. We hold that the statute is constitutional insofar as it authorizes the trial court to award counsel fees to either party on a gender-neutral, needs-only basis. We further hold that this construction of the Domestic Relations Law shall be

prospective only to proceedings and applications pending on March 5, 1979, the date of the *Orr* decision.

## I

The facts, other than conflicting allegations of financial worth, are essentially not in dispute. The parties were married in 1955 and divorced in July, 1974, pursuant to a judgment of the Supreme Court, Westchester County. Four children were born during the marriage: three sons, presently 23, 12 and 10 years old, respectively; and one daughter, presently 21 years old. By stipulation, the two older children remained with the defendant father, while the two younger sons remained in the plaintiff mother's custody in the marital home in Scarsdale, New York, subject to the defendant's visitation rights. The underlying proceeding which triggered the present controversy was a contested postdivorce custody proceeding commenced by the defendant in the Supreme Court, Westchester County. It appears that in December, 1975, the plaintiff mother, without any notice to or consent of the defendant father, vacated the marital residence with the two youngest children and moved to Chapel Hill, North Carolina. Since this had the effect of frustrating the defendant's visitation rights, he immediately moved to modify the judgment of divorce so as to obtain custody of these two children. There followed a plenary hearing lasting some 20 days at which numerous witnesses, both lay and medical, testified. An application was also made by the plaintiff, during the proceeding, for counsel fees. The defendant husband, however, did not cross-apply for counsel fees. While the defendant ultimately succeeded in obtaining custody of the two youngest boys, the trial court (CARUSO, J.), in an order dated December 30, 1976, nevertheless awarded the plaintiff counsel fees of $12,000 and disbursements of $1,500.

The defendant thereupon appealed to this court, arguing for the first time that section 237 of the Domestic Relations Law was unconstitutional as violative of the equal protection clause (citing, *inter alia, Frontiero v Richardson*, 411 US 677 and *Reed v Reed*, 404 US 71). This court, in a decision dated December 27, 1977 (60 AD2d 639), refused to reach the constitutional question upon the ground that "[a]ppellant, having failed to request a counsel fee, lacks the requisite standing to challenge the constitutionality of the statute (see 8 NY Jur, Constitutional Law, § 50)." At the same time, however, this

court afforded the defendant some relief by reducing the award of counsel fees to $5,000, plus disbursements.

Aggrieved, the defendant appealed to the Court of Appeals. On February 22, 1978 that court dismissed the appeal on the ground, *inter alia,* that "no substantial constitutional question is directly involved" (43 NY2d 946, 947). Still aggrieved, the defendant filed a petition for certiorari to the Supreme Court of the United States.

While the defendant was pursuing his appellate review channels, the plaintiff was proceeding with enforcement remedies. Upon the defendant's failure to pay the reduced award, the plaintiff moved in May, 1978, pursuant to section 244 of the Domestic Relations Law, for the entry of a judgment for $6,500, representing arrears of counsel fees plus disbursements. In opposition, the defendant sought to relitigate the propriety of the award of counsel fees previously reviewed by this court; specifically, he stated that the award was unjust because his wife had assets of $464,000 while he earned only $19,000 per year and had a net debt of some $50,000. The defendant also requested a stay of entry of a judgment pending further appeals. The court (FERRARO, J.), by an order dated July 11, 1978, granted the plaintiff's application for a judgment of $6,500 while denying the defendant's application for a stay.

Meanwhile, the defendant's appeal to the Supreme Court of the United States on the underlying order awarding counsel fees (i.e., 60 AD2d 639, mot to dismiss app granted 43 NY2d 946, *supra)* was slowly winding its way through channels. On March 5, 1979, the celebrated case of *Orr v Orr* (440 US 268) was decided, striking down an Alabama statutory scheme similar to New York's, as violative of the equal protection clause of the Constitution. On March 19, 1979 the Supreme Court of the United States granted the *Childs* petition for a writ of certiorari, vacated the previous order of this court and "remanded [the case to the Appellate Division of the Supreme Court of New York, Second Judicial Department] for further consideration in light of *Orr v Orr* [440 US] p. 268" *(Childs v Childs,* 440 US 952, *supra).* The State Attorney-General has been given permission to intervene (see Executive Law, § 71) and, at this time, both the appeal from the order granting a judgment of $6,500, and the remand from the Supreme Court of the United States on the constitutionality of section 237 are before this court.

## II

Analysis must commence with a statement of the law as it presently exists:

"§ 237. Counsel fees and expenses.

"(a) In any action or proceeding brought (1) to annul a marriage or to declare the nullity of a void marriage, or (2) for a separation, or (3) for a divorce, or (4) to declare the validity or nullity of a judgment of divorce rendered against the wife who was the defendant in any action outside the State of New York and did not appear therein where the wife asserts the nullity of such foreign judgment, or (5) by a wife to enjoin the prosecution in any other jurisdiction of an action for a divorce, or (6) upon any application to annul or modify an order for counsel fees and expenses made pursuant to this subdivision provided, *the court may direct the husband,* or where an action for annulment is maintained after the death of the husband may direct the person or persons maintaining the action, *to pay such sum or sums of money directly to the wife's attorney to enable the wife to carry on or defend the action or proceeding as, in the court's discretion, justice requires, having regard to the circumstances of the case and of the respective parties.* Such direction must be made in the final judgment in such action or proceeding, or by one or more orders from time to time before final judgment, or by both such order or orders and the final judgment. Upon application of the husband or the wife or the person or persons maintaining an action for annulment after the death of the husband, upon such notice to the other party and given in such manner as the court shall direct, the court may, in or before final judgment, annul or modify any such direction. Subject to the provisions of section two hundred forty-four of the domestic relations law the authority granted by the preceding sentence shall extend to unpaid sums or installments accrued prior to the application as well as to sums or installments to become due thereafter. Any applications for counsel fees and expenses may be maintained by the attorney for the wife in his own name in the same proceeding.

"(b) *Upon any application to annul or modify an order or judgment* for alimony or for custody, visitation, or maintenance of a child, made as in section two hundred thirty-six or section two hundred forty provided, or upon any application by writ of habeas corpus or by petition and order to show cause concerning custody, visitation or maintenance of a child,

*the court may direct the husband or father to pay such sum or sums of money for the prosecution or the defense of the application or proceeding by the wife or mother as, in the court's discretion, justice requires, having regard to the circumstances of the case and of the respective parties.* With respect to any such application or proceeding, such direction may only be made in the order or judgment by which the particular application or proceeding is finally determined. Any applications for counsel fees and expenses may be maintained by the attorney for the wife in counsel's own name in the same proceeding" (emphasis supplied).

"§ 238. Expenses in enforcement proceedings.

*"In any action or proceeding to compel the payment of any sum of money required to be paid by a judgment or order* entered in an action for divorce, separation, annulment or declaration of nullity of a void marriage, or in any proceeding pursuant to section two hundred forty-three, two hundred forty-four, two hundred forty-five, or two hundred forty-six, the court may in its discretion require either party to pay the expenses of the other in bringing, carrying on, or defending such action or proceeding. *In any such action or proceeding, applications for counsel fees and expenses may be maintained* by the attorney for the respective parties in counsel's own name and in counsel's own behalf" (emphasis supplied).

"§ 244. Enforcement by execution of judgment or order in action for divorce, separation or annulment.

*"Where the husband* in an action for divorce, separation or annulment, or declaration of nullity of a void marriage, or a person other than the husband when an action for an annulment is maintained after the death of the husband, *makes default in paying any sum of money as required by the judgment or order directing the payment thereof, the court in its discretion may make an order directing the entry of judgment for the amount of such arrears, or for such part thereof as justice requires having a regard to the circumstances of the respective parties,* together with ten dollars costs and disbursements. The application for such order shall be upon such notice to the husband or other person as the court may direct. Such judgment may be enforced by execution or in any other manner provided by law for the collection of money judgments. The relief herein provided for is in addition to any and every other remedy, including, but not limited to the remedy provided pursuant to the provisions of

section forty-nine-b of the personal property law, to which the wife may be entitled under the law; provided that when a judgment for such arrears or any part thereof shall have been entered pursuant to this section, such judgment shall thereafter not be subject to modification under the discretionary power granted by this section; and after the entry of such judgment the judgment creditor shall not hereafter be entitled to collect by any form of remedy any greater portion of such arrears than that represented by the judgment so entered" (emphasis supplied).

■ The focus of our inquiry is, of course, the Supreme Court's decision in *Orr v Orr* (440 US 268, *supra)* and its impact on the foregoing laws. The Alabama statutory scheme construed was quite similar to that of New York's inasmuch as, by statute, Alabama likewise permitted alimony to be granted only to wives, never to husbands (see *Orr v Orr, supra,* p 270, n 1, citing Ala Code, tit 30, § 30-2-51 *et seq.).* As far as we are concerned, *Orr* is noteworthy for its analysis of standing in addition to its examination of the underlying equal protection considerations. The threshold issue of standing is relevant here because, in the December, 1977 order, this court disposed of the constitutional attack on standing grounds, i.e., the "[a]ppellant, having failed to request a counsel fee, lacks the requisite standing to challenge the constitutionality of the statute" (60 AD2d 639, *supra).* In *Orr* it was urged that the defendant lacked standing because he "made no claim that he was entitled to an award of alimony from Mrs. Orr, but only that he should not be required to pay alimony if similarly situated wives could not be ordered to pay. It is therefore possible that his success here will not ultimately bring him relief from the judgment outstanding against him" *(Orr v Orr,* 440 US, at pp 271, 272). Mr. Justice BRENNAN, speaking for a six-member majority, however, failed to find this argument persuasive, pp 272, 273):

"In every equal protection attack upon a statute challenged as underinclusive, the State may satisfy the Constitution's commands either by extending benefits to the previously disfavored class or by denying benefits to both parties * * * In this case, if held unconstitutional, the Alabama divorce statutes could be validated by, *inter alia,* amendments which either (1) permit awards to husbands as well as wives, or (2) deny alimony to both parties * * * [I]f * * * the State takes the second course and denies alimony to both spouses, it is

Mr. Orr and not the hypothetical plaintiff who would benefit
* * *

"There is no question but that Mr. Orr bears a burden he would not bear were he female * * * The burden alone is sufficient to establish standing. Our resolution of a statute's constitutionality often does 'not finally resolve the controversy as between th[e] appellant and th[e] appellee,' *Stanton v. Stanton* [421 US 7, 17]. We do not deny standing simply because the 'appellant, although prevailing here on the federal constitutional issue, may or may not ultimately win [his] lawsuit.' *Id.,* at 18".

Similarly, in the instant case, the fact that the defendant may not ultimately succeed in obtaining the sought after relief when tested against purely objective economic criteria is legally insignificant from the point of view of standing. Nor may the defendant's failure to request a counsel fee in the original custody proceeding be considered any longer a fatal impediment to standing, despite this court's earlier conclusion to that effect. The gravity of the issue being beyond doubt in light of *Orr,* this court may reconsider the question upon remand despite the failure to request such an award or even raise the issue at trial (cf. *Matter of Niagara Wheatfield Administrators Assn. [Niagara Wheatfield Cent. School Dist.],* 44 NY2d 68, 72). In any event, were we to affirm the order upon remand from the Supreme Court upon the ground that the defendant's failure to raise any equal protection infirmity before the trial court constituted an adequate State ground for such affirmance (see *Orr v Orr,* 440 US, at pp 274-275; cf. *Henry v Mississippi,* 379 US 443, 446), the defendant would still possess the requisite standing to attack the constitutionality of the statutory scheme. This follows because the defendant affirmatively requested counsel fees during the *subsequent* enforcement proceeding in May, 1978. Consequently, at no time has appellate scrutiny of sections 238 and 244 of the Domestic Relations Law been impaired.

■ Having disposed of the threshold procedural objections, the Supreme Court turned its attention to the equal protection problem itself. The court held that the Alabama statutory scheme of imposing alimony obligations on husbands but not wives violated the equal protection clause of the Fourteenth Amendment. " 'To withstand scrutiny' under the Equal Protection Clause, ' "classifications by gender must serve important governmental objectives and must be substantially related to

achievement of those objectives" ' " *(Orr v Orr,* 440 US, at p 279, citing *Califano v Webster,* 430 US 313, 316-317). Alimony is, in principle, a valid governmental objective because it seeks to assist needy spouses. However, no statutory scheme may be upheld on the basis of the State's preference for an allocation of family responsibility under which the wife plays merely a submissive, dependent role. "[T]he 'old notion' that 'generally it is the man's primary responsibility to provide a home and its essentials,' can no longer justify a statute that discriminates on the basis of gender. 'No longer is the female destined solely for the home and the rearing of the family, and only the male for the marketplace and the world of ideas' " *(Orr v Orr,* 440 US, at p 280, citing *Stanton v Stanton,* 421 US 7, 14-15; see, also, *Craig v Boren,* 429 US 190, 198). Putting it another way, while providing for alimony is a valid legislative action, *gender* could no longer provide an accurate index of need, or an " 'accurate proxy' " *(Orr v Orr,* 440 US, at p 280, citing *Craig v Boren, supra,* p 204; see, also, *Reed v Reed,* 404 US 71, 76, *supra).* Since the parties' finances were *already* required to be considered by the Alabama statutory scheme before any trial court determination *(Orr v Orr, supra,* p 281), it logically followed that any " 'gender-based distinction is gratuitous' " *(Orr v Orr, supra,* p 282, citing *Weinberger v Wiesenfeld,* 420 US 636, 653). Accordingly, the Supreme Court concluded that any classification based purely on gender was irrational from an equal protection point of view, and the underlying statutory scheme unconstitutional.

## III

■ Having examined the constitutional underpinnings of *Orr,* there can be no doubt that sections 237 and 244 of the Domestic Relations Law, with their present gender predicates, must likewise fall under the prohibition of equal protection principles. Section 238 of the Domestic Relations Law, as recently amended to provide for counsel fees to either spouse, is, however, constitutionally permissible. It matters not that our inquiry is addressed to statutes which authorize counsel fees to wives only, and not alimony obligations. Like the Alabama statute which was stricken, section 237 of the Domestic Relations Law is designed to assist needy wives and guarantee their ability to bring matrimonial actions unimpeded by monetary obstacles; on its face, the statute is specifi-

cally conceived "to enable the wife to carry on or defend the action or proceeding" (Domestic Relations Law, § 237, subd [a]; see *Emmer v Emmer,* 69 AD2d 850 [April 16, 1979], citing *Martin v Martin,* 28 AD2d 897; *Zang v Zang,* 63 AD2d 561, citing *Kann v Kann,* 38 AD2d 545; *LaPorte v LaPorte,* 60 AD2d 966; *Ross v Ross,* 47 AD2d 866; *Winter v Winter,* 39 AD2d 69, 71-72, affd 31 NY2d 983; see, also, 11B Zett-Edmonds-Schwartz, NY Civ Prac, § 38.06, subd [1], p 38-65). Without repeating the equal protection argument verbatim, *Orr* makes it readily apparent that New York's statutory scheme of granting counsel fees purely as a function of gender is irrational and cannot stand. As the Court of Appeals observed with respect to the analogous setting of a section of the Family Court Act which subjected girls to a Person in Need of Supervision (PINS) adjudication until the age of 18, while simultaneously affording immunity to boys from such liability after the age of 16, "since there is no justification for the age-sex distinction, so much of section 712 (subd [b]) of the Family Court Act as encompasses females between the ages of 16 and 18 must be stricken as unconstitutional" *(Matter of Patricia A.,* 31 NY2d 83, 89; see, also, *Seidenberg v McSorley's Old Ale House,* 308 F Supp 1253, 1259-1260). Since New York's statutory scheme presently requires the trial court to take into consideration the respective finances of the parties before making a determination of counsel fees (see Domestic Relations Law, §§ 237, 250; cf. *Garrel v Garrel,* 59 AD2d 885), it logically follows that " 'the gender-based distinction is gratuitous' " *(Orr v Orr,* 440 US, at p 282, citing *Weinberger v Wiesenfeld,* 420 US 636, 653, *supra);* that is to say, the purpose of the legislation will be satisfied based purely on objective economic criteria and without resort to any impermissible gender classification. The conclusion that New York's statutory scheme is unconstitutional insofar as it is predicated on gender is not novel. In *Thaler v Thaler* (89 Misc 2d 315, 319-325, revd on other grounds 58 AD2d 890), Mr. Justice HARNETT reasoned that sections 236 and 237 of the Domestic Relations Law were violative of the equal protection clause based upon an analysis quite similar to that of *Orr.* Other trial courts have reached similar conclusions in the wake of *Orr.*[1] It is important to note, however, despite the patent

1. See *Laka v Laka,* NYLJ, March 20, 1979, p 12, col 3; *Levy v Levy,* NYLJ, April 19, 1979, p 13, col 5; *Robson v Robson,* NYLJ, March 27, 1979, p 6, col 6; cf. *Matter of Roth,* NYLJ, March 27, 1979, p 12, col 5.

invalidity of sections 237 and 244, that section 238 of the Domestic Relations Law, as amended in 1978, is perfectly constitutional within the strictures of *Orr.* This follows because the statute presently authorizes the trial court to "require *either party to pay the expenses of the other* in bringing, carrying on, or defending such" an enforcement proceeding, including specifically counsel fees (emphasis added).

## IV

■ ■ Although sections 237 and 244 of the Domestic Relations Law as presently drafted fall within the proscription of *Orr,* yet it does not necessarily follow that they must be deemed irrevocably unconstitutional and annulled. We are cognizant of the argument that, counsel fees being a creature of statute and unknown to the common law, such an infirmity as discerned here leaves this court powerless to resurrect the authority to award counsel fees absent new and constitutional legislative action (see *Lambert v Lambert,* 45 AD2d 715, citing *Silbert v Silbert,* 22 AD2d 893, affd 16 NY2d 564 and *Blaine v Blaine,* 20 AD2d 903; cf. *Sharrock v Dell Buick-Cadillac,* 45 NY2d 152, 166-167).[2] But an appellate court has an obligation to pursue every reasonable path of reconciliation of the challenged statute consonant with the Constitution, rather than setting it aside. In this regard, it is commonly said that every presumption in favor of the statute will be indulged, every effort made to construe ambiguous language so as not to conflict with fundamental law (see, e.g., *Marcus Assoc. v Town of Huntington,* 45 NY2d 501, 505, citing *Lighthouse Shores v Town of Islip,* 41 NY2d 7, 11; *Matter of Carter v Carter,* 58 AD2d 438, 445-446 [opn by SHAPIRO, J.], citing *Hirson v United States Corp.,* 263 App Div 646, 650, affd 289 NY 564; see, also, McKinney's Cons Laws of NY, Book 1, Statutes, § 150, subd c). And while courts traditionally refrain from construing a challenged statute in such a way so as to "expand" or add to the language, as opposed to merely excising from it (see *Matter of Malpica-Orsini,* 36 NY2d 568, 571, app dsmd 423 US 1042), nevertheless, under appropriate circumstances, a court may read a statute expansively, or in tandem with other statutes, so as to prevent serious damage to overriding public policy (see *Welsh v United States,* 398 US 333, 355-356 [HARLAN, J., concurring]). Without such an expansive

---

2. For cases where this argument was made, see *Levy v Levy,* NYLJ, April 19, 1979, p 13, col 5, *supra; Robson v Robson,* NYLJ, March 27, 1979, p 6, col 6, *supra.*

reading in the instant case, the orderly processes by which indigent spouses seek legal recourse would come to a halt producing extremely inequitable circumstances, totally unforeseen by the Legislature. As Mr. Justice HARNETT pointed out in *Thaler* (89 Misc 2d 315, 328, *supra),* with respect to the possible elimination of alimony: "Total elimination of alimony would produce a much greater shock to the legislative design than spreading its availability to all dependent spouses * * * It would be a totally inappropriate response to the problem at hand." While suspending the authorization to grant counsel fees would have an impact of lesser severity than the suspension of alimony, the principle is the same. Public policy encourages the equitable resolution of matrimonial disputes (see, e.g., *Kay v Kay,* 37 NY2d 632, 637). Accordingly, this court construes sections 237 and 244 of the Domestic Relations Law as constitutional since we deem them to authorize counsel fees to either spouse on a gender-neutral, needs-basis only. Such a construction is consistent with the traditional rule that where a statute has been found to violate the equal protection clause, courts will traditionally read into it the improperly excluded class (see, e.g., *Califano v Westcott,* 443 US —, 47 USLW 4817, 4821, aid to dependent children benefits; *Califano v Goldfarb,* 430 US 199, Social Security Act survivorship benefits; *Weinberger v Wiesenfeld,* 420 US 636, *supra,* same; *Frontiero v Richardson,* 411 US 677, *supra,* armed forces fringe benefits; *Levy v Louisiana,* 391 US 68, wrongful death actions; *Matter of Passante v Walden Print. Co.,* 53 AD2d 8, 13, workers' compensation survivorship benefits). Furthermore, there is precedent for reading other statutes in tandem for the purpose of resisting constitutional challenges (see *Matter of Carter v Carter,* 58 AD2d 438, 446, *supra,* Family Ct Act, §§ 413 and 414 read in tandem; see, also, *Tessler v Siegel,* 59 AD2d 846, same). In the instant case, section 238 of the Domestic Relations Law presently allows the trial court to require either party to pay the expenses of the other, including counsel fees. This statute, therefore, provides on its face a statutory mechanism by which the trial court may award counsel fees to the husband in a limited proceeding. Additional authority is found in CPLR 8303 (subd [a], par 2), which provides for the granting by the court of a "[d]iscretionary allowance * * * to any party to a difficult or extraordinary case, where a defense has been interposed". It has been suggested by the Attorney-General that since "[n]o precedent has been found for the instant situation", applications for

counsel fees for husbands are consequently "extraordinary" within the meaning of the statute. By resort to either of the foregoing statutes, sections 237 and 244 of the Domestic Relations Law can be constitutionally read as substituting the word "spouse" for "wife".

## V

■ Finally, we address ourselves to the issue of retroactivity. We hold that our construction of these statutes shall have prospective effect only in proceedings pending on the date of the *Orr* decision, March 5, 1979. All other awards of counsel fees which had been conclusively adjudicated as of that date shall not be affected by our holding today. There exists no constitutional impediment to applying changes in law only in cases pending as of the date of such decision (see *New York Public Interest Research Group v Steingut,* 40 NY2d 250, 260-261, citing *Hurd v City of Buffalo,* 41 AD2d 402, 405, affd 34 NY2d 628; *Incorporated Vil. of Northport v Guardian Fed. Sav. & Loan Assn.,* 87 Misc 2d 344, 348-350, affd 54 AD2d 893; cf. *Matter of Gowan v Tully,* 45 NY2d 32, 34). The Supreme Court of the United States in *Chevron Oil Co. v Huson* (404 US 97, 106-107) observed that there are three factors to consider in deciding the issue of retroactivity: (1) does the decision establish a "new principle of law, either by overruling clear past precedent on which litigants may have relied * * * or by deciding an issue of first impression whose resolution was not clearly foreshadowed"; (2) does an examination of the prior history indicate " 'whether retrospective operation will further or retard its operation' "; and (3) does it appear that the decision " 'could produce substantial inequitable results if applied retroactively' ". With respect to the *Orr* decision, it cannot be doubted that it overruled clear past precedent relied upon ceaselessly and that retroactive application prior to March 5, 1979 would produce chaotic, inequitable results (see, also, *Laka v Laka,* NYLJ, March 20, 1979, p 12, col 3, *supra).*

## VI

Accordingly, the matter must be remitted to the trial court for a hearing *de novo.* At such a hearing, both parties may apply for counsel fees. The trial court will make a decision *de novo* as, in the court's discretion, justice requires, having regard to the economic needs of both parties and the circumstances of the case.

LAZER, GULOTTA and MANGANO, JJ., concur.

Order dated December 30, 1976 reversed insofar as appealed from, without costs or disbursements.

Order dated July 11, 1978 modified by deleting therefrom the provision which granted plaintiff's application for a judgment representing arrears in counsel fees. As so modified, said order affirmed, without costs or disbursements.

This case is remitted to the Supreme Court, Westchester County, for further proceedings in accordance with the opinion herein.