OPINION OF THE COURT
Aileen Haas Schwartz, J.
The decisive issue in the instant proceeding for support concerns the legislative control of judicial competence in a legal system committed to the doctrine of judicial review of legislative and executive action. In the context of multiple matrimonial actions, that perdurable query assumes *323 a new significance in 1980, the very year of the New York State Legislature’s enactment of the so-called equitable distribution law. (L 1980, ch 281.) Just as Marshall McLuhan cautioned regarding television that the medium is the message, so, too, is there risk that the lawsuit is the law.
Petitioner wife and respondent husband who were married on June 23, 1973, and who separated in March, 1979, are engaged in matrimonial proceedings now pending in three forums: the petitioner instituted the instant proceeding for support (Family Ct Act, art 4) and related relief on May 11, 1979; the respondent commenced an action for divorce in Pennsylvania on December 20, 1979, and on July 21, 1980, filed an amended complaint, pursuant to the newly enacted divorce code of that State, seeking a divorce on the grounds of “desertion” and “indignities” and determination of property rights; the petitioner commenced an action for separation on the ground of adultery in the New York State Supreme Court, New York County, seeking “alimony, division of property and counsel fees” on January 18,1980.
At the very outset of the scheduled trial in the article 4 of the Family Court Act proceeding, the respondent moved for dismissal pursuant to CPLR 3211 (subd [a], par 4) and section 464 of the Family Court Act based upon the pendency of the other actions. Petitioner opposed dismissal and sought an order of support and counsel fees. Upon stipulation and within the framework of the respondent’s application, a limited hearing was held.
CPLR 3211 (subd [a], par 4) provides: “Motion to dismiss cause of action. A party may move for judgment dismissing one or more causes of action asserted against him on the ground that: * * * 4. there is another action pending between the same parties for the same cause of action in a court of any state or the United States; the court need not dismiss upon this ground but may make such order as justice requires”.
Section 464 of the Family Court Act provides:
“(a) In a matrimonial action in the supreme court, the supreme court on its own motion or on motion of either spouse may refer to the family court an application for temporary or permanent support, or for maintenance or *324 a distribution of marital property. If the supreme court so refers an application, the family court has jurisdiction to determine the application with the same powers possessed by the supreme court and the family court’s disposition of the application is an order of the family court appealable only under article eleven of this act.
“(b) In the absence of an order of referral under paragraph (a) of this section and in the absence of an order by the supreme court granting temporary or permanent support or maintenance, the family court during the pendency of such action may entertain a petition and may make an order under section four hundred forty-five of this article for a spouse who is likely to become in need of public assistance or care.”
The very juxtaposition of CPLR 3211(subd [a], par 4) and section 464 of the Family Court Act illustrates that although the two statutes address the same problem of multiple litigation, the prescribed judicial role differs fundamentally in the respective remedial formulas.
CPLR 3211 (subd [a], par 4) embodies respected decisional and statutory antecedents regarding duplicative litigation. Guidelines in pleas in abatement were early established by practice and statute: “Where the object of two legal proceedings is the same, convenience as well as a proper regard for the rights of debtor and creditor require if possible that the fund in which both are interested should be subjected to diminution by one litigation only, and the parties themselves spared the unnecessary labor and expense of conducting two controversies over the same matter. It would seem also that if both tribunals, whose interference has been invoked, have equal or concurrent jurisdiction, it should continue to be exercised by that one whose process was first issued.” (Schuehle v Reiman, 86 NY 270, 273; see, also, Travis v Myers, 67 NY 542; Groshon v Lyon, 16 Barb 461; 2 Carmody-Wait 2d, NY Prac, § 11:1 et seq.; 4 Weinstein-Korn-Miller, NY Civ Prac, pars 3211.18-3211.24.)
By constitutional design, New York accords ultimate authority to the Legislature in the regulation of practice and procedure in the court system. (NY Const, art VI, § 30.) *325 Legislative hegemony can be traced, historically and analytically, to the doctrine of parliamentary supremacy. It remained for the nineteenth century era of panacean popularity of codification, however, to solidify legislative preeminence in this respect. A resurgent concern with court administration has led to a “trend * * * to give the courts the power to regulate their own procedure and administration and then to hold them responsible for results.” (Winberry v Salisbury, 5 NJ 240, 253, cert den 340 US 877.) Consonant with New York State constitutional amendments in 1978, the Legislature has delegated broad power to the Chief Judge of the State of New York, who is the chief judicial officer of the unified court system, and to the Chief Administrator and Administrative Board subject to the reserved powers of the Legislature. (See NY Const, art VI, §§ 28, 30; Judiciary Law, §§ 210, 211, 212, 213.) Realistically, that delegated power should be viewed within the context of an inherited patchwork design of practice and procedure still subject to continuous legislative change.
New York has epitomized the “Code State”. Virtually since its inception, the Federal judicial system has reflected a different operational plan. Congress early conferred upon the Supreme Court the power to prescribe general rules of civil procedure, criminal procedure and evidence subject to congressional review. (See US Code, tit 28, §§ 2072, 2076; tit 18, §§ 3771, 3772.)
Even when first enacted in 1962, effective 1963, CPLR 3211 (subd [a], par 4) had the extraordinary status of a “rule” which, by legislative design and subject to the reserved powers of the Legislature, permitted revision by a judicial body. (CPLR 102; see effect of constitutional amendments in 1978, NY Const, art VI, §§ 28, 30.) As indicated above, CPLR 3211 (subd [a], par 4) constitutes the culmination of decisional and statutory standards prescribing guidelines for the exercise of judicial discretion. CPLR 3211 (subd [a], par 4) may be waived by failure to move for judgment based thereon in timely fashion. (CPLR 3211, subd [e].) The distinguishing characteristic of CPLR 3211 (subd [a], par 4) lies in the discretion reposed in the Judge.
*326 In sharp contrast, section 464 of the Family Court Act is a legislative enactment that delineates the subject matter jurisdiction of the Family Court. American courts, generally speaking, derive judicial competence from a constitutional source. “Behind the words of the constitutional provisions”, the Supreme Court has said, “are postulates which limit and control.” (Monaco v Mississippi, 292 US 313, 322.) Whether courts by their very nature possess inherent judicial power continues as a time-honored jurisprudential debate. (See Glidden Co. v Zdanok, 370 US 530; Marbury v Madison, 1 Cranch [US] 137.) There is no serious doubt, however, that the court is the expositor of the Constitution even as to questions regarding its own jurisdiction. (Marbury v Madison, supra.)
In accordance with the United States Constitution, Congress may define and regulate the appellate jurisdiction of the Supreme Court and the jurisdiction of all other article III (US Const, art III) courts. “Article III left Congress free to establish inferior federal courts or not as it thought appropriate * * * The Congressional power to ordain and establish inferior courts includes the power ‘of investing them with jurisdiction either limited, concurrent, or exclusive, and of withholding jurisdiction from them in the exact degrees and character which to Congress may seem proper for the public good.’ ” (Lockerty v Phillips, 319 US 182, 187; see, also, United States v American Friends Serv. Committee, 419 US 7.) Matter of McCardle (7 Wall [US] 506) graphically demonstrates the extent of Congressional power in this respect even as to appellate jurisdiction of the Supreme Court. As described by Mr. Justice Harlan in Glidden Co. v. Zdanok (370 US 530, 567, supra), “Congress has consistently with that article [article III of the United States Constitution] withdrawn the jurisdiction of this Court to proceed with a case then sub judice, Ex parte McCardle”. The Supreme Court reasoned in Matter of McCardle (supra, p 514): “What, then, is the effect of the repealing act upon the case before us? We cannot doubt as to this. Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing-the fact and dismissing the *327 cause. And this is not less clear upon authority than upon principle.”
“There is a serious question whether the McCardle case could command a majority view today.” (Douglas, J., dissenting in Glidden Co. v Zdanok, supra, p 605.) However, no one would seriously doubt the power of Congress to regulate the exercise of jurisdiction.
The Federal system provides instructive analogy regarding legislative primacy in defining and regulating jurisdiction in the ,New York constitutional scheme. (See NY Const, art VI.) Section 464 of the Family Court Act refers to two courts, the New York Supreme Court and the Family Court. Section 7 of article VI of the New York State Constitution confers, in pertinent part, “general original jurisdiction in law and equity” upon the New York Supreme Court and further provides for that court’s jurisdiction over all new classes of actions and proceedings created by the Legislature. Section 140-b of the Judiciary Law explicitly recognizes that the jurisdiction of the New York Supreme Court includes “all the jurisdiction which was possessed and exercised by the supreme court of the colony of New York at any time, and by the court of chancery in England on the fourth day of July, seventeen hundred seventy-six”. (See for early history of jurisdiction of the New York Supreme Court Matter of Steinway, 159 NY 250; see, also, Kagen v Kagen, 21 NY2d 532.) The jurisdiction of the New York Supreme Court encompasses all the jurisdiction of the Family Court, subject to legislative regulation of the exercise of that jurisdiction. (See NY Const, art VI, § 7; Judiciary Law, § 140-b; Kagen v Kagen, supra; Matter of Seitz v Drogheo, 21 NY2d 181; see, also, Thrasher v United States Liab. Ins. Co., 19 NY2d 159, 166; see, also, Matter of Steinway, supra.) To be sure, the Legislature-court relationship with respect to the Supreme Court and its zealously guarded inheritance of general jurisdiction in law and equity differs from that regarding the Family Court. The Family Court is a court of enumerated jurisdiction. (NY Const, art VI, § 13.) In Matter of Silver v Silver (36 NY2d 324, 326), which held that section 466 of the Family Court Act did not confer the claimed juris *328 diction, the Court of Appeals reaffirmed a basic proposition: “The powers of the Family Court, as a court of limited jurisdiction, are restricted to those granted it by the precise language of the statute.”
Section 464 of the Family Court Act defines and regulates the jurisdiction of the Family Court in plain and unambiguous terms. The “plain meaning” test of statutory construction enjoys universal recognition. (See Maine v Thiboutot, 448 US 1; Matter of Roosevelt Raceway v Monaghan, 9 NY2d 293, 304, opp dsmd 368 US 12.) “We have often held”, the Court of Appeals reminded in Matter of Roosevelt Raceway v Monaghan (supra, p 304) “that, if the language of a statute is plain and unambiguous, there is neither need nor warrant to look elsewhere for its meaning.” That the statute is of jurisdictional magnitude does not sanction departure from a fundamental canon of statutory construction. See the equally clear section 463 of the Family Court Act with its explicit “filing of a petition” language. Nevertheless, section' 464 of the Family Court Act has been the subject of construction in a host of cases involving a myriad of fact patterns with varied reasoning and results. (See, e.g., Lapiana v Lapiana, 67 AD2d 966; Montes v Montes, 54 AD2d 627; Matter of Fischman v Fischman, 51 AD2d 725; Matter of Lo Casto v Lo Casto, 45 AD2d 712; Peters v Peters, 32 AD2d 726; Palmore v Patmore, 19 AD2d 845; see as to predecessor statute: Fiorentino v Fiorentino, 249 App Div 561; Costa v Costa, 247 App Div 192; see, also, McKay v McKay, 82 Misc 2d 929; McDonald v McDonald, 73 Misc 2d 584; Matter of Lopez v Lopez, 63 Misc 2d 252; Matter of Lazar v Lazar, 61 Misc 2d 36.)
Montes v Montes (supra) and Lapiana v Lapiana (supra) illustrate the proper view. In the words of the Appellate Division, First Department, in Montes v Montes (54 AD2d 627, 628, supra), which involved institution in Supreme Court of a divorce action by respondent subsequent to commencement of the Family Court proceeding: “The Family Court was without power to make such an order [of support for the wife] during the pendency of the matrimonial action in the Supreme Court unless either the Su *329 preme Court referred the matter to the Family Court or there was a showing that the wife was ‘likely to become in need of public assistance or care.’ ” In the words of the Appellate Division, Second Department, in Lapiana v Lapiana (67 AD2d 966, supra), which involved a Family Court proceeding instituted subsequent to a pending Supreme Court action for separation: “The Family Court did not have jurisdiction to entertain the petition herein because there was pending a Supreme Court action brought by petitioners for a separation * * * The record did not justify application of the public assistance exception”. Suffice it to say there are cases that improperly adopt CPLR 3211 (subd [a], par 4) guidelines in section 464 of the Family Court Act matters with duplicative litigation and its attendant ills as a consequence of that flawed equation of discretionary procedural authority with a legislative jurisdictional command. (See, e.g., Matter of Fischman v Fischman, 51 AD2d 725, supra [2d Dept], which conflicts with Montes v Montes, supra; see, also, Matter of Lo Casto v Lo Casto, 45 AD2d 712, supra, cited with favor in Lapiana v Lapiana, supra.)
To petitioner’s plaint of grave injustice notwithstanding it was she who instituted the Supreme Court proceeding, the following considerations are noted. Viewed as a component of the comprehensive regulatory scheme prescribed in part 6 of article 4 of the Family Court Act, “Effect of Action for Separation, Divorce or Annulment”, the logical cogency of construction of section 464 of the Family Court Act as a jurisdictional imperative virtually defies contradiction. Of paramount significance, the plain purpose of the regulatory statute represents a legislative endeavor to eliminate the serious problem of multiple litigation in the particularly sensitive area of matrimonial proceedings.
The vice of competing lawsuits has long vexed legislatures and courts. CPLR 3211 (subd [a], par 4) and section 464 of the Family Court Act and like standards mark the progress of our legal system from the “ultraformal, cumbrous, dilatory and expensive procedure inherited from the Middle Ages.” (Winberry v Salisbury, 5 NJ 240, 252, cert den 340 US 877, supra.) The suitor then pleaded at his *330 peril, and procedural strategy, including multiple actions in different forums, too often determined substantive rights. Modern reforms in the administration of justice seek to end procedural gamesmanship with its attendant potential for subjection of the individual to a litigational labyrinth to vindicate substantive rights.
Section 464 of the Family Court Act thus emerges as a salutary regulation of concurrent jurisdiction with governing authority conferred upon the Supreme Court as the court invested with the more-inclusive and superseding jurisdiction. (See Kagen v Kagen, 21 NY2d 532, supra.) In this regard it is noted further that section 19 of article VI of the New York State Constitution provides for transfer of actions, and proceedings, including the circumstance of lack of subject jurisdiction, to the proper court, and CPLR 325 prescribes implementing procedures, e.g., application to the Supreme Court. (See to like effect Kagen v Kagen, supra, p 538.)
Whatever the philosophical underpinning of a statutory definition of jurisdiction and notwithstanding the ultimate judicial authority to decide issues challenging legislative enactments including the very subject of the court’s jurisdictional power, the teaching of Matter of McCardle (7 Wall [US] 506, 514, supra), is clear: “Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.”
Section 464 of the Family Court Act, as a legislative jurisdictional command, and not CPLR 3211 (subd [a], par 4), as a legislative grant of discretionary authority, governs the matter now before this court.
Nothing in law or fact presented by petitioner would sanction an order of support in this proceeding. Section 464 of the Family Court Act mandates dismissal.
A like result is indicated for the application for counsel fees. That does not mean a want of judicial power to entertain such application. The law is clear that a court possesses competence to determine its own jurisdiction, and, indeed, until an adjudication of lack of jurisdiction, its orders must be obeyed. (United States v Mine Workers, *331 330 US 258.) It would naturally follow that the court has competence with respect to counsel fees. All other considerations would affect the scope and merits of the application.
However, even assuming judicial power to entertain petitioner’s application for counsel fees, that application must be and is denied under the circumstances. Initially, it is noted that the requested counsel fees in the amount of $9,052 plus disbursements are limited to originally retained counsel. Petitioner has made payment of approximately $6,561.84 plus $150 as a conference fee.
Not only was the evidentiary presentation defective in demonstrating the bases for the amount requested (Matter of Potts, 213 App Div 59, 62, affd 241 NY 593), but of transcending significance, the petitioner failed to sustain the burden of proving entitlement to an award under the circumstances.
Scarcely does an application for counsel fees not call forth the apparently coded sequence of citation of Kann v Kann (38 AD2d 545 [1st Dept]), and its progeny and the conflicting Appellate Division, Second Department, view. (See, e.g., Silver v Silver, 63 AD2d 1017; Ross v Ross, 47 AD2d 866.) Kann v Kann (supra, p 545) has come to stand for the proposition that “Counsel fees are awarded in a matrimonial action in order to insure that an indigent wife has legal representation.” Contrasted with that seemingly categorical criterion, the Appellate Division, Second Department, has consistently reasoned that proof of indigency is a factor but not a prerequisite to an award of counsel fees in a matrimonial action. (See, e.g., Silver v Silver, supra; Ross v Ross, supra; see, also, Domestic Relations Law, § 237, as a statement of public policy; Matter of Steinberg v Steinberg, 18 NY2d 492.)
Whatever its original import and vigor, the Kann v Kann (supra) standard appears of transformed and diminishing force in the wake of recent United States Supreme Court pronouncements and New York State legislation regarding the rights and obligations of each of the parties to and flowing from a marriage. (See Orr v Orr, 440 US 268; Childs v Childs, 69 AD2d 406; Domestic Relations Law, *332 §§ 236, 237; see reasoning of Appellate Division, First Dept, in Blauner v Blauner, 60 AD2d 215, lv to opp den 44 NY2d 648; see, also, Fabrikant v Fabrikant, 19 NY2d 154.) New York State “[p]ublic policy encourages the equitable resolution of matrimonial disputes”. (Childs v Childs, 69 AD2d 406, 419.)
Under all the circumstances of the instant proceeding and parallel lawsuits, including.petitioner’s admitted substantial assets, petitioner’s income as an attorney, the relatively short duration of the marriage, a second marriage for both, grown children from both parties’ earlier marriages, all of petitioner’s children being emancipated, respondent’s assets and income as an attorney and the legal expenses of each party in the several actions, petitioner has failed to establish entitlement to have the burden of the subject counsel fees transferred to the respondent in this proceeding. This court has deliberately limited its findings to those necessary and proper in light of the other matrimonial litigation involing these parties.
The petition is dismissed without prejudice to such application as petitioner or respondent may be advised in any other action or proceeding.